BOBBY MARTIN, Employee, Plaintiff v. MARTIN BROTHERS GRADING, Employer, and N.C. FARM BUREAU MUTUAL INSURANCE COMPANY, Third-Party Administrator, Defendants

No. COA02-381

(Filed 17 June 2003)

**Workers' Compensation— weight of evidence—discretion of Industrial Commission**

A workers' compensation finding that plaintiff's disability was proximately caused by head injuries suffered while he worked for his son's grading company was supported by the evidence. Although defendant pointed to plaintiff's pre-existing small vessel disease, the Industrial Commission was entitled to rely upon medical testimony that it was "possible," "probable," or "likely" that plaintiff's accidents caused his disability. The level of the witnesses' certainty went to the weight of their testimony and not its competence.

Appeal by defendants from the Opinion and Award filed 23 October 2001 by the North Carolina Industrial Commission. Heard in the Court of Appeals 28 January 2003.

*Crumley & Associates, P.C., by Daniel L. Deuterman and Pamela W. Foster, for plaintiff-appellee.*

*Young Moore and Henderson, P.A., by J. D. Prather and Zachary C. Bolen, for defendants-appellants.*

MARTIN v. MARTIN BROS. GRADING

[158 N.C. App. 503 (2003)]

GEER, Judge.

It is undisputed on this appeal that plaintiff Bobby Martin suffered compensable work-related accidents on 29 November 1996 and 2 April 1997. The sole issue before this Court is whether the Industrial Commission's decision finding that plaintiff's disability was caused by those accidents is supported by competent evidence. We hold that it is and affirm.

---

Defendant Martin Brothers Grading is a grading company owned by plaintiff's son, Ricky Martin. Martin Brothers clears and grades land prior to new construction. In August 1996, after being laid off from his prior employment, plaintiff went to work full time for his son running a compactor.

On 29 November 1996, a falling tree limb struck plaintiff on the head while plaintiff was helping clear property for a softball field. The force of the blow knocked plaintiff unconscious. Because there were no witnesses, no one knows how long plaintiff lay unconscious. A coworker found plaintiff wandering in the woods and brought him to his son, who then took plaintiff to the hospital.

Plaintiff was hemorrhaging from a large laceration that exposed his skull. The hospital's triage staff was unable to control plaintiff's scalp hemorrhage and plaintiff underwent emergency surgery to close and repair the laceration. A CT scan revealed that plaintiff had also suffered a subdural hematoma to the right hemisphere of his brain.

After returning home from the hospital on 1 December 1996, both plaintiff and his wife noticed that plaintiff was having problems with his memory. He was also irritable, anxious, and had begun repeating himself. Dr. Kimberly Livingston, the neurosurgeon who had treated plaintiff in the hospital, reported to plaintiff's family physician that plaintiff's symptoms were consistent with a closed head injury. Plaintiff's medical records prior to 29 November 1996 showed no evidence that plaintiff had ever before experienced any neurological, cognitive, or memory problems.

Dr. Livingston released plaintiff to return to work on 3 March 1997. Because neither plaintiff nor defendant-employer felt that plaintiff was yet ready to return to work, he was assigned to the lightest duty work available: driving a small earth compactor. On 2 April 1997, plaintiff backed the compactor onto a mound of dirt, over-

turned the compactor, and sustained another head injury. Plaintiff has not worked since 2 April 1997.

Plaintiff has experienced continuing personality, memory, and cognitive problems. He was seen by his family physician who recommended that plaintiff undergo a neurological examination. Subsequently, he revisited Dr. Livingston who suggested that he see a neuropsychologist regarding the nature of his memory and cognitive problems.

On 25 March 1998, the defendant-carrier referred plaintiff to Dr. Thomas Gualtieri for a neuropsychiatric evaluation. After performing complete physical and neurological examinations, Dr. Gualtieri also recommended that plaintiff undergo a battery of neuropsychological tests.

On 8 June 1998, plaintiff was referred by his attorney to Dr. Stephen Kramer, an Associate Professor of Psychiatry at the Wake Forest University School of Medicine and the Director of the Wake Forest University Department of Neuropsychiatry. Dr. Kramer consulted with Dr. Jonathan Burdette, a neuroradiologist at Wake Forest, who reviewed plaintiff's 10 December 1996 CT scan and subsequent 9 November 1998 Gadolinium enhanced MRI scan.

On 15 December 1998, 18 January 1999, and 19 August 1999, plaintiff was examined, at the request of defendants, by Alexander A. Manning, Ph.D, an expert in neuropsychology, specializing in the study of how the brain functions and the relationship of brain functions to behavior. Dr. Manning performed a complete battery of neuropsychological tests on plaintiff.

Plaintiff filed separate workers' compensation claims for the November 1996 and April 1997 accidents. The two claims were consolidated and initially heard by Deputy Commissioner Chrystal Stanback who awarded plaintiff temporary total disability benefits. On defendants' appeal, the Full Commission affirmed the decision of the Deputy Commissioner, finding that "[t]he greater weight of the medical evidence establishes that plaintiff's disability after April 2, 1997 was the proximate result of either the injury by accident of November 29, 1996 or a combination of the compensable injuries plaintiff sustained on November 29, 1996 and April 2, 1997." Because the Commission further found that plaintiff was and remains incapable of earning the wages that he was receiving at the time of his injuries by accident at the same or other employment, the

Commission awarded plaintiff temporary total disability benefits from 2 April 1997 until further order of the Commission or until plaintiff returns to work.

Defendants argue that the Commission's finding that plaintiff's disability after 2 April 1997 was the proximate result of his work injuries is unsupported by competent evidence. In reviewing a decision by the Commission, this Court's role "is limited to determining whether there is any competent evidence to support the findings of fact, and whether the findings of fact justify the conclusions of law." *Cross v. Blue Cross/Blue Shield*, 104 N.C. App. 284, 285-86, 409 S.E.2d 103, 104 (1991). The Commission's findings of fact are conclusive upon appeal if supported by competent evidence, even if there is evidence to support a contrary finding. *Morrison v. Burlington Industries*, 304 N.C. 1, 6, 282 S.E.2d 458, 463 (1981). On appeal, this Court may not re-weigh the evidence or assess credibility. *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998). Findings of fact may be set aside on appeal only "when there is a complete lack of competent evidence to support them." *Young v. Hickory Bus. Furniture*, 353 N.C. 227, 230, 538 S.E.2d 912, 914 (2000).

The record contains ample evidence to support the Commission's finding that plaintiff's disability was proximately caused by either the November 1996 accident or by a combination of the November 1996 and April 1997 accidents. Although defendant points to plaintiff's pre-existing small-vessel disease as a cause for plaintiff's disability, the Commission was entitled to rely upon medical testimony otherwise.

Specifically, in Dr. Kramer's opinion, "the most likely diagnosis" for plaintiff was persistent post-concussive syndrome resulting from the November 1996 and April 1997 accidents with the November 1996 accident "an essential factor producing the syndrome." On cross-examination, Dr. Kramer rejected defendants' contention that plaintiff's disability arose from the small-vessel disease. According to Dr. Kramer, it was "not likely." Dr. Gualtieri similarly testified that the injury to the right hemisphere of plaintiff's brain—occurring in the November 1996 accident—is "more likely" the cause of plaintiff's problems than the small-vessel disease. He repeated that plaintiff's disability was "probably" related to the head injury in November 1996 and that the disability was "more probably a result of this injury."

Dr. Manning's testimony was more equivocal. Yet, even he testified:

With Mr. Martin, I've got a number of signs that are fairly strong indications that the right hemisphere is being affected to a significant degree more than the left hemisphere. So because of that lateralized finding, I think I said in my report, that this may be an indication of the traumatic brain injury that he had. He had a subdural hematoma that affected the right side of the brain. These lingering findings here, this lateralized finding, may be some evidence that, indeed, there is still an [e]ffect of that traumatic brain injury present that is—that overlays the diffuse [small-vessel disease] process that was also there.

Dr. Manning further testified that "[i]t's clearly possible" that the accidents in November 1996 and April 1997 "could have accelerated [plaintiff's] deterioration" and that "it would seem more likely than not that it accelerated that." Later, he clarified that it was "likely" that the injury "aggravated" the progress of plaintiff's small-vessel disease. While he would not testify that the aggravation was more likely than not, he did confirm that "[t]here is a possibility that the traumatic brain injury did play a role in what I'm seeing."

Defendants point to the testimony of Dr. Livingston and Dr. Burdette to support their claim that plaintiff failed to prove that his accidents and not his small-vessel disease caused his disability. While Dr. Livingston does provide support for defendants' contention, Dr. Burdette, who reviewed plaintiff's MRI, does not. Dr. Burdette stressed that he is not an expert on post-concussive syndrome and that although his review of the MRI did not reveal a "gross abnormality," that fact "does not entirely exclude a traumatic postconcussive-type episode" because "postconcussive syndrome is . . . more on a cellular level in the brain, and these findings might not be seen, in fact, usually are not seen on a brain MRI."

It was the responsibility of the Commission to weigh all of this expert testimony and determine whose opinion was most persuasive. On appeal, defendants seek to undermine plaintiff's evidence by arguing that the doctors did not testify to a reasonable degree of medical certainty and by suggesting that the evidence merely establishes that plaintiff's condition is *possibly* related to his work injuries. Defendants' contentions have been rejected by this Court. As this Court most recently held in *Johnson v. Piggly Wiggly of Pinetops, Inc.*, 156 N.C. App. 42, 49, 575 S.E.2d 797, 802 (2003):

No longer is testimony inadmissible for its failure to state it was based on "reasonable medical probability." The degree in which

an expert testifies as to causation, be it "probable" or "most likely" or words of similar import, goes to the weight of the testimony rather than to its admissibility.

Applying this principle, this Court upheld reliance on expert testimony that it was "possible" that the incident at issue caused plaintiff's condition. *Id. See also Peagler v. Tyson Foods, Inc.*, 138 N.C. App. 593, 599, 532 S.E.2d 207, 211 (2000) (internal quotation marks omitted) ("[W]e note that the expert testimony need not show that the work incident caused the injury to a 'reasonable degree of medical certainty.' "); *Buck v. Procter & Gamble Mfg. Co.*, 52 N.C. App. 88, 94-95, 278 S.E.2d 268, 272-73 (1981) (expert's opinion that accident "could" have caused disc protrusion competent although also testified on cross-examination that it was "equally possible" that the defect was degenerative in nature).

As *Johnson* stresses, whether the doctors in this case testified that it was "possible," "probable," or "likely" that plaintiffs' accidents caused his disability, the level of their certainty went to the weight of the testimony and not its competence. The decision regarding what weight to give each piece of expert evidence is a task for the Commission and not this Court. *Adams*, 349 N.C. at 681, 509 S.E.2d at 414. Since there exists competent evidence that plaintiff's work injury or injuries proximately caused his disability, we affirm the Commission's Opinion and Award.

Affirmed.

Judges WYNN and BRYANT concur.