SONIA EDITH CASTANEDA, Employee, Plaintiff v. INTERNATIONAL LEG WEAR GROUP, Employer, THE HARTFORD, Carrier, Defendants

No. COA08-526

(Filed 2 December 2008)

## 1. Workers' Compensation— back injury—causation—sufficiency of evidence

The evidence in a workers' compensation case was sufficient to permit the Industrial Commission to find that plaintiff's annular disc tear injury was caused by a work-related accident where it was reasonable to infer from plaintiff's testimony that she suffered a violent motion when she was struck by a box on a conveyor belt and that the motion caused trauma to the spine; plaintiff had a spinal MRI which revealed an annular disc tear; and an orthopedic surgeon testified that it was "quite possible" and "more likely than not" that the tear was. caused by plaintiff's work-related accident.

## 2. Workers' Compensation— ability to find comparable employment—termination

The evidence in a workers' compensation case supported the Industrial Commission's conclusion that plaintiff's inability to find comparable employment is due to her compensable injury where her employment was terminated after her injury. Even if the Commission erred by determining that plaintiff was not terminated for misconduct, she testified that she could not do similar jobs because of medical restrictions, she submitted an exhibit showing her efforts to find employment, and she testified

that she was told by one employer that she could not perform the duties of the position because of her physical limitations.

Judge TYSON dissenting.

Appeal by defendants from Opinion and Award entered 10 January 2008 by Commissioner Buck Lattimore for the North Carolina Industrial Commission. Heard in the Court of Appeals 25 September 2008.

*Randy D. Duncan, for plaintiff-appellee.*

*Hedrick, Gardner, Kincheloe & Garofalo, L.L.P., by M. Duane Jones, for defendants-appellants.*

CALABRIA, Judge.

International Leg Wear Group ("ILG") and The Hartford (collectively, "defendants") appeal from the Full Commission of the North Carolina Industrial Commission's ("the Commission") Opinion and Award, which granted Sonia Edith Castaneda ("plaintiff") temporary total disability benefits. We affirm.

## I. Facts

Plaintiff, age 41, began to work for ILG in its shipping and packaging department in May 2005. Plaintiff's job duties required her to lift boxes weighing between five and 125 pounds and move them from one conveyor belt to another. On Thursday, 20 October 2005, another employee pushed a "heavy" box down a conveyor belt while plaintiff had her back turned to it, facing the opposite direction. The box struck plaintiff's lower back and caused her to lose her balance. As plaintiff fell, she "[held] onto the rails."

Plaintiff's fellow employees helped her regain her balance since she was unable to stand on her own. Plaintiff testified she felt immediate pain in her lower back and right leg. Plaintiff was transported to the Frye Hospital emergency room where she was prescribed "muscle relaxation medicine" and instructed not to return to work the next day.

The following Monday, 24 October 2005, plaintiff failed to return to work because of severe pain in her back and legs. She informed her supervisors why she was absent. On Tuesday, 25 October 2005, plaintiff returned to work and asked supervisors to send her to a doctor. Plaintiff's supervisor responded by sending plaintiff to the safety pre-

cautions office. After she returned from that office, plaintiff's supervisor asked her to sign a "written verbal" warning concerning her work performance. Plaintiff alleged she was unable to read the warning due to her limited knowledge of English, but understood "it said that [she] was not getting along with other people." Plaintiff believed she was being terminated and refused to sign the paper. Plaintiff placed her initials under the following handwritten sentence: "Refused to sign because she feels that she gets along well with American people." Plaintiff contends her supervisors told her that placing her initials on the paper would show they had presented her with the warning. Plaintiff did not receive any prior warnings before this incident. The facts are disputed whether plaintiff voluntarily resigned or was terminated from her employment with ILG on 25 October 2005.

On 26 October 2005, ILG arranged for plaintiff to seek medical care at the Hart Industrial Clinic. Plaintiff was prescribed pain medication and placed on work restrictions. The work restrictions limited her to lifting five pounds or less and prohibited her from any activity requiring bending or twisting. Plaintiff was subsequently treated by Dr. Myron Smith, III ("Dr. Smith") at Carolina Orthopedic. Dr. Smith determined plaintiff suffered from "low back sprain with lower extremity weakness." Due to the weakness in plaintiff's right leg, Dr. Smith ordered an MRI on the lumbar spine. Dr. Smith left his association with Carolina Orthopedic. Plaintiff's care was transferred to Dr. Christopher Daley ("Dr. Daley"), a board certified orthopedic surgeon, who examined and treated her. Plaintiff was subsequently referred to Dr. Ralph Maxy ("Dr. Maxy"), a board certified orthopedic surgeon specializing in spinal surgery.

On 23 November 2005, a spinal MRI was performed on the plaintiff. The MRI revealed a possible L4-5 annular disc tear. Both Dr. Daley and Dr. Maxy submitted deposition testimony to Deputy Commissioner Ronnie E. Rowell ("Deputy Commissioner Rowell"). Dr. Daley unequivocally opined that plaintiff's "questionable" annular tear was not causally related to the incident that occurred on 20 October 2005. Dr. Daley diagnosed plaintiff with "lumbar spondylosis" associated with degenerative disk disease. Dr. Maxy disagreed and opined that it "was quite possible" plaintiff's annular disc tear resulted from this specific incident.

Deputy Commissioner Rowell accorded greater weight to the testimony of Dr. Maxy and concluded plaintiff had sustained an injury by accident, arising out of and in the course of her employment with

ILG, which resulted in an annular disc tear injury. Deputy Commissioner Rowell further concluded plaintiff was entitled to temporary total compensation benefits beginning 20 October 2005 until further order of the Commission. Defendants were ordered to pay: (1) compensation to plaintiff at the rate of $346.68 per week and (2) all medical expenses incurred by plaintiff as a result of this injury. Without hearing or receiving further evidence, a divided panel of the Full Commission adopted the Opinion and Award of Deputy Commissioner Rowell. Commissioner Dianne C. Sellers dissented on the basis that Dr. Maxy's opinion "amount[ed] to speculation and plaintiff [] failed to carry the burden of proving by competent evidence that a causal relationship exist[ed] between the work-related accident and her annular disc tear." Defendants appeal.

## II. Standard of Review

"[W]hen reviewing Industrial Commission decisions, appellate courts must examine whether any competent evidence supports the Commission's findings of fact and whether those findings . . . support the Commission's conclusions of law." *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 496, 597 S.E.2d 695, 700 (2004) (internal brackets and quotations omitted). The Full Commission's findings are conclusive on appeal where based on competent evidence, even when there is evidence to the contrary. *Raper v. Mansfield Sys., Inc.*, 189 N.C. App. 277, 281-82, 657 S.E.2d 899, 904 (2008). "The evidence tending to support plaintiff's claim is to be viewed in the light most favorable to plaintiff, and plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence." *Barbour v. Regis Corp.*, 167 N.C. App. 449, 454-55, 606 S.E.2d 119, 124 (2004) (quoting *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998)). The Commission's conclusions of law are reviewed *de novo*. *Effingham v. Kroger Co.*, 149 N.C. App. 105, 109, 561 S.E.2d 287, 291 (2002). "Where there are sufficient findings of fact based on competent evidence to support the Commission's conclusions of law, the award will not be disturbed because of other erroneous findings which do not affect the conclusions." *Meares v. Dana Corp.*, 193 N.C. App. 86, 89-90, —— S.E.2d ——, —— (2008) (quoting *Estate of Gainey v. Southern Flooring & Acoustical Co.*, 184 N.C. App. 497, 503, 646 S.E.2d 604, 608 (2007)) (internal brackets and quotation marks omitted).

## III. Causation

[1] Defendants argue plaintiff failed to establish a causal relationship existed between the work-related accident and plaintiff's annular disc tear. We disagree.

Defendants challenge the following findings of fact entered by the Commission regarding the cause of plaintiff's injury:

3. On the morning of October 20, 2005, plaintiff was working with her back to the conveyor line when one of the heavier boxes was being pushed off the conveyor line by another employee. Plaintiff was unaware of the box and was struck in her mid to low back area and was pushed forward, which twisted her spine in the process. As plaintiff was falling to the floor she landed on some racks.

. . . .

8. On November 23, 2005, plaintiff had a spinal MRI, which revealed an L4-5 annular disc tear. Dr. Maxy testified that more likely than not, plaintiff's injury at work caused the traumatic L4-5 annular disc tear, which is the reason for plaintiff's ongoing pain and plaintiff's absence of symptoms prior to her injury at work.

9. The Full Commission gives greater weight to the testimony of Dr. Maxy, who specializes in spinal disorders, than to Dr. Daley, who does not specialize in spinal disorders.

Based on these findings, the Commission concluded as a matter of law, "[o]n October 20, 2005, plaintiff sustained an injury by accident, arising out of and in the course of her employment with defendant resulting in an annular disc tear injury."

The burden rests upon the plaintiff to produce competent evidence establishing each element of compensability, including a causal relationship between the work-related accident and his or her injury. *See Holley v. ACTS, Inc.*, 357 N.C. 228, 234, 581 S.E.2d 750, 754 (2003) ("Plaintiff has the burden to prove each element of compensability." (Citations omitted)). "The quantum and quality of the evidence required to establish *prima facie* the causal relationship will of course vary with the complexity of the injury itself." *Hodgin v. Hodgin*, 159 N.C. App. 635, 639, 583 S.E.2d 362, 365 (2003) (quotation omitted). Where complicated medical questions are presented before the Commission, "only an expert can give competent opinion evidence as to the cause of the injury." *Holley*, 357 N.C. at 232, 581 S.E.2d at 753 (quotation omitted).

Expert testimony is insufficient to prove causation when "there is additional evidence or testimony showing the expert's opinion to be a

guess or mere speculation." *Holley*, 357 N.C. at 233, 581 S.E.2d at 753. In *Holley*, the Supreme Court concluded when a doctor's testimony revealed the speculative nature of his opinion, such evidence was insufficient to establish causation. *Id.* In *Holley*, one of plaintiff's doctors testified there was a "low possibility" that plaintiff's accident caused her injury. *Id.* Another doctor testified, "I am unable to say with *any degree of certainty* whether or not [the injury] is related to the development of her [medical condition]" and "I don't really know what caused [plaintiff's medical condition]." *Id.* at 233, 581 S.E.2d at 753-54.

The facts in *Holley* are distinguishable from the case at bar. The Full Commission found that "plaintiff had a spinal MRI, which revealed an L4-5 annular disc tear." This finding was based on competent evidence. Dr. Maxy testified that "[s]he did have an L4/5 annular tear. . . ." Although Dr. Maxy admitted that "you can't tell for sure" what the cause of the annular tear was, this qualifying language goes towards the weight of his testimony and does not rise to the level of "guess" or "speculation" as the doctor's testimony in *Holley*. *See Adams v. Metals USA*, 168 N.C. App. 469, 483, 608 S.E.2d 357, 365 (2005), *aff'd per curiam*, 360 N.C. 54, 619 S.E.2d 495 (2005) ("The fact that the treating physician in the case could not state with reasonable medical certainty that plaintiff's accident caused his disability, is not dispositive—the degree of the doctor's certainty goes to the weight of his testimony."). Dr. Maxy testified it was "quite possible" and "more likely than not" that the tear was caused by plaintiff's work-related injury. *See Kelly v. Duke Univ.*, 190 N.C. App. 733, 739, 661 S.E.2d 745, 749 (June 3, 2008) (No. COA07-874) (concluding doctor's testimony that plaintiff's death was more likely than not caused by her diabetes is competent evidence to support causation) (quoting *Whitfield v. Laboratory Corp. of Am.*, 158 N.C. App. 341, 351, 581 S.E.2d 778, 785 (2003) ("the 'mere possibility of causation,' as opposed to the 'probability' of causation, is insufficient to support a finding of compensability")).

The dissent contends Dr. Maxy's opinion is speculative because he based his opinion in part on the assumption that plaintiff suffered a "violent motion," and there was no competent evidence to find plaintiff "arched her back violently" or otherwise suffered a "violent motion." We respectfully disagree. Dr. Maxy opined that "if she arched her back violently, that would cause violent motion between the two vertebrae which could in fact lead to an annular tear. That's' the sense in which it can cause an annular tear, any violent motion

from the box hitting the back." Although no competent evidence supports a finding that plaintiff in fact arched or twisted her back when she was hit by the box, there is other evidence from which the Full Commission could base a finding that plaintiff's injury caused her annular tear. *Estate of Gainey, supra.* Dr. Maxy also opined that blunt force trauma, such as being struck forcefully in the back, could cause an annular tear. Plaintiff testified she was hit in the lower back with a heavy box which caused her to lose her balance and grab onto the rails. Viewing the facts in the light most favorable to the plaintiff, it is reasonable to infer that when someone is struck by a heavy box with enough force to push a person forward, that motion can be characterized as a violent motion. *Barbour, supra.* Since there was evidence supporting a finding that plaintiff suffered a violent motion, Dr. Maxy's opinion is not based on speculation.

In *Raper v. Mansfield Sys., Inc.*, 189 N.C. App. at 282-83, 657 S.E.2d at 905, this Court concluded that there was no evidence precisely identifying the cause of injury. In that case, the plaintiff developed carpal tunnel syndrome after a work accident. *Id.* A doctor testified that if plaintiff had sprained his wrist as a result of the accident, the wrist sprain "more likely" was the cause of the carpal tunnel syndrome. *Id.*, 189 N.C. App. at 280, 657 S.E.2d at 903. However, there was no evidence supporting a finding that plaintiff sprained his wrist. *Id.*, 189 N.C. App. at 282-83, 657 S.E.2d at 905. In addition, the doctor acknowledged the sprain could have been caused by diabetes or another cause unrelated to the accident. *Id.*

Here, it is reasonable to infer from plaintiff's testimony describing the accident, that she suffered a violent motion when she was hit by the box and that the motion caused trauma to the spine, which resulted in the annular tear. The credibility and weight of Dr. Maxy's testimony is for the Full Commission. *See Martin v. Martin Bros. Grading*, 158 N.C. App. 503, 506, 581 S.E.2d 85, 87 (2003) ("On appeal, this Court may not re-weigh the evidence or assess credibility."). Viewed in the light most favorable to the plaintiff, plaintiff's testimony describing the accident and Dr. Maxy's opinion based on the "objective finding" on the MRI as well as plaintiff's past medical history of no prior symptoms, is competent evidence for the Commission to conclude that the annular tear was a compensable injury. *Barbour, supra.* We affirm on this issue.

IV. Inability to Find Suitable Employment

[2] Defendants also argue that because plaintiff was terminated for misconduct, she "terminated any efforts by Employer-Defendant to

satisfy providing any work within any medical restrictions" and she is not entitled to benefits. We disagree.

When an employee has sustained a compensable injury, has been provided light duty or rehabilitative employment, and is terminated for misconduct or other fault of the employee, the termination "does not automatically constitute a constructive refusal to accept employment so as to bar the employee from receiving benefits. . . ." *Seagraves v. Austin Co. of Greensboro*, 123 N.C. App. 228, 233-34, 472 S.E.2d 397, 401 (1996). "[U]nder the *Seagraves'* test, to bar payment of benefits, an employer must demonstrate initially that: (1) the employee was terminated for misconduct; (2) the same misconduct would have resulted in the termination of a nondisabled employee; and (3) the termination was unrelated to the employee's compensable injury." *McRae*, 358 N.C. at 493, 597 S.E.2d at 699. The initial burden is on the employer. *Seagraves*, 123 N.C. App. at 233, 472 S.E.2d at 401.

If the employer meets this burden, the burden shifts to the employee to rebut the presumption that the employee's misconduct was a constructive refusal to perform the work provided, resulting in a forfeiture of benefits for lost earnings. *Id.* at 234, 472 S.E.2d at 401. The employee must show that his or her inability to find other employment at a wage comparable to that earned prior to the injury is due to the work-related disability. *Id.* In deciding these questions, "the Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony." *Flores v. Stacy Penny Masonry Co.*, 134 N.C. App. 452, 458, 518 S.E.2d 200, 204 (1999) (citation omitted).

Defendants argue that plaintiff constructively refused employment when she failed to sign the letter and is not entitled to any disability benefits.

In the instant case, the Full Commission found that:

On October 24, 2005, plaintiff was in severe pain. She called work and stayed out that day. On October 25, 2005, when plaintiff returned to work, she asked to be sent to a doctor. Defendant had plaintiff go to the office where she was requested to sign a "written verbal" warning about work performance. Plaintiff believed she would be terminated if she signed the form, but did initial her name to the form. Defendant was not satisfied and terminated plaintiff. Plaintiff had no prior misconduct or warnings. The

undersigned find that there is insufficient evidence to support a finding that plaintiff was terminated for misconduct.

Even if the Full Commission erred in determining that plaintiff was not terminated for misconduct, if she showed that her inability to find other employment at a wage comparable to the wage she earned prior to the injury is due to a work-related disability, then her payments are not barred. *Seagraves, supra.*

The Full Commission found that

Plaintiff has completed an extensive job search without success at various employers and temporary agencies. Plaintiff's prior jobs all required bending, twisting, and stooping which she can no longer do as a result of her work related injury while employed by defendant. Plaintiff has been on various work restrictions and continues to be assigned restrictions by Dr. Maxy of no lifting more than 15 pounds and no excessive bending, twisting or stooping.

The Full Commission concluded that "Plaintiff has been unable to find suitable employment as a result of her injury, and is entitled to temporary total disability compensation beginning October 20, 2005, and continuing until further order of the Commission. N. C. Gen. Stat. § 97-29."

Plaintiff testified that she could not do "pick-and-pack" jobs because of doctor's restrictions on lifting, bending, twisting and stooping. Plaintiff submitted an exhibit showing that from March 2006 until May 2006 she sought employment from more than twenty employers. Plaintiff also testified that she was told by one employer that due to her physical limitations she could not perform the job duties of the position.

Viewing the evidence in the light most favorable to the plaintiff, we hold that this evidence supports the conclusion of law that plaintiff's inability to find comparable employment is due to her compensable injury.

Affirmed.

Judge McCULLOUGH concurs.

Judge TYSON respectfully dissents in a separate opinion.

TYSON, Judge dissenting.

The majority's opinion erroneously holds plaintiff presented competent evidence to establish a causal relationship between her work-related accident and alleged annular disc tear and affirms the Commission's Opinion and Award granting plaintiff temporary total disability benefits. Dr. Maxy's expert medical opinion concerning the cause of plaintiff's injury was based upon mere speculation and conjecture and is insufficient to meet plaintiff's burden of proof to establish the essential element of causation. I respectfully dissent.

## I.  Standard of Review

[W]hen reviewing Industrial Commission decisions, appellate courts must examine whether any competent evidence supports the Commission's findings of fact and whether those findings . . . support the Commission's conclusions of law. The Commission's findings of fact are conclusive on appeal when supported by such competent evidence, even though there is evidence that would support findings to the contrary.

*McRae v. Toastmaster, Inc.*, 358 N.C. 488, 496, 597 S.E.2d 695, 700 (2004) (internal citations and quotations omitted).

The Commission's mixed findings of fact and conclusions of law and its conclusions of law applying the facts are fully reviewable *de novo* by this Court. *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 684 (1982); *Cauble v. Soft-Play, Inc.*, 124 N.C. App. 526, 528, 477 S.E.2d 678, 679 (1996), *disc. rev. denied*, 345 N.C. 751, 485 S.E.2d 49 (1997).

## II. Causal Relationship

Defendants assign error to the Commission's Opinion and Award and argue plaintiff failed to establish the essential element of a causal relationship between her work-related accident and alleged annular disc tear. I agree and vote to reverse the Commission's Opinion and Award.

## A.  Speculation and Conjecture

The burden of proof rests upon the plaintiff to produce relevant, probative, and competent evidence to establish a causal relationship exists between the work-related accident and the alleged injury. *See Holley v. ACTS, Inc.*, 357 N.C. 228, 231, 581 S.E.2d 750, 752 (2003) ("In a worker's compensation claim, the employee has the burden of

proving that his claim is compensable." (Citation and quotation omitted)). "The quantum and quality of the evidence required to establish *prima facie* the causal relationship will of course vary with the complexity of the injury itself." *Hodgin v. Hodgin*, 159 N.C. App. 635, 639, 583 S.E.2d 362, 365 (citation omitted), *disc. rev. denied*, 357 N.C. 578, 589 S.E.2d 126 (2003). "In cases involving complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury." *Holley*, 357 N.C. at 232, 581 S.E.2d at 753 (citation and quotation omitted).

When medical opinion testimony is necessary, "medical certainty is not required, but an expert's speculation is insufficient to establish causation." *Adams v. Metals USA*, 168 N.C. App. 469, 475-76, 608 S.E.2d 357, 362 (citation and quotation omitted), *aff'd per curiam*, 360 N.C. 54, 619 S.E.2d 495 (2005). This Court recently reiterated:

> [Our] Supreme Court has allowed "could" or "might" expert testimony as probative and competent evidence to prove causation. *However, "could" or "might" expert testimony is insufficient to support a causal connection when there is additional evidence or testimony showing the expert's opinion to be a guess or mere speculation.* An expert witness' testimony is insufficient to establish causation where the expert witness is unable to express an opinion to any degree of medical certainty as to the cause of an illness. Likewise, where an expert witness expressly bases his opinion as to causation of a complex medical condition solely on the maxim *post hoc ergo propter hoc* (after it, therefore because of it), the witness provides insufficient evidence of causation.

*Raper v. Mansfield Sys., Inc.*, 189 N.C. App. 277, 281-82, 657 S.E.2d 899, 904 (2008) (quoting *Adams*, 168 N.C. App. at 476, 608 S.E.2d at 362.) (emphasis supplied)); *see also Holley*, 357 N.C. at 233, 581 S.E.2d at 753 ("Although expert testimony as to the possible cause of a medical condition is admissible if helpful to the jury, it is insufficient to prove causation, particularly when there is additional evidence or testimony showing the expert's opinion to be a guess or mere speculation." (Internal citation and quotation omitted)).

Here, defendants challenge the following findings of fact contained in the Commission's Opinion and Award regarding the issue of causation:

3. On the morning of October 20, 2005, plaintiff was working with her back to the conveyor line when one of the heavier boxes was

being pushed off the conveyor line by another employee. Plaintiff was unaware of the box and was struck in her mid to low back area and was pushed forward, which twisted her spine in the process. As plaintiff was falling to the floor she landed on some racks.

. . . .

8. On November 23, 2005, plaintiff had a spinal MRI, which revealed an L4-5 annular disc tear. Dr. Maxy testified that more likely than not, plaintiff's injury at work caused the traumatic L4-5 annular disc tear, which is the reason for plaintiff's ongoing pain and plaintiff's absence of symptoms prior to her injury at work.

9. The Full Commission gives greater weight to the testimony of Dr. Ralph Maxy, who specializes in spinal disorders, than to Dr. Daley, who does not specialize in spinal disorders.

The Commission concluded as a matter of law, "[o]n October 20, 2005, plaintiff sustained an injury by accident, arising out of and in the course of her employment with defendant resulting in an annular disc tear injury." Findings of fact numbered 3 and 8 are not supported by competent evidence in the record before us and do not support the Commission's conclusion of law.

Finding of fact numbered 3 states, "[p]laintiff was unaware of the box and was struck in her mid to low back area and was pushed forward, *which twisted her spine in the process.*" (Emphasis supplied). During the hearing, plaintiff offered no testimony or any other evidence tending to support the notion that she had "twisted" her spine as she fell to the ground after being hit with a box. "We are not bound by the findings of the Commission when they are not supported by competent evidence in the record." *English v. J.P. Stevens & Co.*, 98 N.C. App. 466, 471, 391 S.E.2d 499, 502 (1990).

The dispositive issue before this Court becomes whether Dr. Maxy's expert testimony was sufficient to establish a causal relationship between plaintiff's work-place accident and her injury. Dr. Maxy's testimony and other record evidence shows his expert opinion was based upon mere conjecture or speculation. *Holley*, 357 N.C. at 233, 581 S.E.2d at 753.

On direct examination, and after being asked a hypothetical question that paralleled the facts at bar, Dr. Maxy testified that "[i]t

is *quite possible* that [the 20 October 2005 incident] caused the injury noted on the MRI, the annular tear." (Emphasis supplied). Dr. Maxy based his opinion upon "the objective finding on the MRI plus her history, the fact she did not have these symptoms prior to the box hitting her on her back." Dr. Maxy testified he had not reviewed plaintiff's MRI itself, but only the Radiology Report. Dr. Maxy testified that the objective finding he was referring to indicated: "that there are findings that represent—*may represent* an atypical annular tear." (Emphasis supplied). Upon review of the actual Radiology Report, the "objective finding" Dr. Maxy was referencing states, "2. Fluid signal within the left posterolateral aspect of the interverebral L4-5 disc. This *may* represent a somewhat atypical annular tear *or* simply fluid within the substance of the disc material." (Emphasis supplied).

Dr. Maxy further testified that the annular tear "could" cause the symptoms plaintiff was experiencing, but that "[i]t doesn't commonly" and acknowledged that other patients can present with an annular tear based upon a "degenerative change." Dr. Maxy's concerns and plaintiff's non-cooperation were also noted in Dr. Maxy's physical exam:

> Also there were some findings on exam [sic] that seemed to be somewhat perplexing. I couldn't examine her motor function very well because *it seemed as if she was giving me less than full effort.* And so *I couldn't tell whether or not she had any true weakness.* She also seemed to walk with a left-sided antalgic gait, in other words, a left-sided limp when in fact she told us that the pain was worse down the right side than it was on the left. *So there were some inconsistencies.*

(Emphasis supplied). Dr. Maxy testified that if there had not been "an objective finding" on the MRI, he would not have placed plaintiff on any work restrictions.

The following colloquy on cross-examination is quite significant and indicative of the wholly speculative nature of Dr. Maxy's testimony:

> [Defense counsel]: I believe if I understand your testimony correctly and you testified that it certainly was *possible* for the force of a box striking someone's back, I assume that the box striking the back caused enough force to jar the area between the two vertebrae?

[Dr. Maxy]: Right, exactly. It's not the box itself that hits the disk and causes a rupture. That's not what happens, but the box hitting her in the back could cause a violent, violent motion between two vertebrae. For example, if she arched her back violently, that would cause violent motion between two vertebrae which could in fact lead to an annular tear. That's the sense in which it can cause an annular tear, any violent motion from the box hitting the back.

[Defense counsel]: Again so I'm assuming if a box comes with some significant force and hits you in the back or then throws you forward or in a manner that doesn't cause you to do the violent motion, then it would not cause an annular tear?

[Dr. Maxy]: That's correct. It's not the blunt force of the box itself that causes the tear as much as the violent motion between the two vertebrae that could cause the tear.

[Defense counsel]: So without knowing exactly how [plaintiff] reacted when the box struck her, *can you really tell for sure if that incident is what caused the annular tear?*

[Dr. Maxy]: *Well, you can't tell for sure in any of this, to tell you the truth.* You really can't. I base my opinion on her history and the findings. If she told me she had had a long history of back pain, it would be less likely the cause.

(Emphasis supplied). Dr. Maxy clearly based his expert opinion on the presumption that plaintiff had "arched her back violently" or that some other "violent motion" occurred after she was hit with the box. However, as the majority's opinion correctly states, "no competent evidence supports a finding that plaintiff in fact arched or twisted her back when she was hit by the box[.]" Further, Dr. Maxy frankly acknowledged that without knowing how plaintiff reacted when the box struck her, he could not opine whether the incident at ILG caused the annular tear.

After a review of Dr. Maxy's deposition testimony, I agree with Commissioner Sellers's dissenting opinion and would hold that Dr. Maxy's medical opinion regarding the cause of plaintiff's injury is only "a guess or mere speculation." *Holley,* 357 N.C. at 233, 581 S.E.2d at 753. Dr. Maxy did not review plaintiff's MRI and based his diagnosis in part on a finding in the Radiology Report that "*may* represent an atypical annular tear." (Emphasis supplied). Based solely on his

own physical exam, Dr. Maxy would not have placed plaintiff on any work restrictions.

## B. After it, therefore because of it

Dr. Maxy heavily emphasized plaintiff's medical history, "the fact she did not have these symptoms prior to the box hitting her on her back[,]" and implicitly stated that if plaintiff had presented a history of back pain, his diagnosis would have been different. Dr. Maxy's opinion is also pure *post hoc ergo propter hoc* testimony and does not prove causation. *See Raper*, 189 N.C. App. at 281-82, 657 S.E.2d at 904 ("[W]here an expert witness expressly bases his opinion as to causation of a complex medical condition solely on the maxim *post hoc ergo propter hoc* (after it, therefore because of it), the witness provides insufficient evidence of causation.").

On cross-examination, Dr. Maxy testified that without knowing how plaintiff reacted when the box struck her, he "[could not] tell for sure" if the incident at ILG is what caused the annular tear. Nonetheless, Dr. Maxy opined that based upon the "objective finding" in the Radiology Report, in combination with plaintiff's history, plaintiff's work-related accident "more likely than not" caused an annular tear.

Because a majority of the Commission assigned greater credibility to Dr. Maxy's opinion and we are bound by this determination, a review of the quantum of Dr. Maxy's testimony shows it is insufficient to establish to a reasonable medical certainty that plaintiff's accident was causally related to her annular disc tear. *See Holley*, 357 N.C. at 233, 581 S.E.2d at 753 ("Although expert testimony as to the possible cause of a medical condition is admissible if helpful to the jury, it is insufficient to prove causation, particularly when there is additional evidence or testimony showing the expert's opinion to be a guess or mere speculation." (Internal citation and quotation omitted)).

Dr. Maxy's expert testimony is insufficient to support the Commission's conclusion of law that "[o]n October 20, 2005, plaintiff sustained an injury by accident, arising out of and in the course of her employment with defendant resulting with an annular disc tear injury." Because the Commission's Opinion and Award is affected with error on this basis, it is unnecessary to address defendant's remaining assignment of error.

## II.  Conclusion

Dr. Maxy's testimony is insufficient to establish to a reasonable degree of medical certainty that plaintiff's work-related accident was causally related to her annular disc tear. *Holley*, 357 N.C. at 233, 581 S.E.2d at 753; *Adams*, 168 N.C. App. at 476, 608 S.E.2d at 362. Under *de novo* review, the Commission's conclusion of law that plaintiff sustained an injury by accident, arising out of and in the course of her employment, resulting in an annular disc tear is unsupported by its findings of fact and is erroneous as a matter of law. The Commission's Opinion and Award granting plaintiff temporary total disability benefits is erroneous and should be reversed. I respectfully dissent.