An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-653

NORTH CAROLINA COURT OF APPEALS

Filed: 7 January 2014

ROSEANNE MUCKLE,

    Employee,

    Plaintiff

v.

                        North Carolina
                        Industrial Commission
                        I.C. No. X33108

DOLGENCORP, LLC, Employer, SELF-INSURED (DOLLAR GENERAL RISK MANAGEMENT, Administrator),

    Defendant.


Appeal by Defendant from opinion and award entered 6 March 2013 by the North Carolina Industrial Commission. Heard in the Court of Appeals 4 November 2013.

    *Brumbaugh, Mu & King, P.A., by Kenneth W. King, Jr., for Plaintiff.*

    *Patterson Dilthey, LLP, by Phillip J. Anthony and James A. Barnes IV, for Defendant.*


DILLON, Judge.


Dolgencorp, LLC (Defendant) appeals from an opinion and award entered by the Full Commission of the North Carolina

Industrial Commission (the Commission) in favor of Roseanne Muckle (Plaintiff). For the following reasons, we reverse.

## I. Factual & Procedural Background

On or about 27 December 2010[1], Plaintiff was employed by Defendant as a store manager at Dollar General, Inc., when she slipped and fell while collecting shopping carts in the store's icy parking lot. Plaintiff returned to work the following day, but had difficulty performing her job duties and informed her district manager that she needed to see a doctor.

Plaintiff was referred to Inner Banks Urgent Care, where she was examined by Dr. Nancy Brous on 17 January 2011. Plaintiff reported pain on the right side of her lower back and buttocks down to her right thigh, and a tingling and numbness in her lower back. The X-rays taken revealed no fractures; Plaintiff was given pain medication and placed on light duty work restrictions.

Plaintiff returned to Dr. Brous for a follow-up examination on 24 January 2011. According to Dr. Brous's notes, Plaintiff reported that she had had "almost total resolution of her pain."

---

[1] Both parties state in their briefs that the incident giving rise to this case occurred on 27 December 2010. The Commission's findings stated that the incident occurred on 26 December 2010, however, and the record evidence is conflicting in this respect.

Dr. Brous also noted: "It is a little tender in the buttock area to touch but she has no pain and is able to stand all day. [Plaintiff was initially placed] on light duty, but [] was never on light duty. She is able to do her full job." Dr. Brous further noted that she would "close this case" if Plaintiff remained "pain free" upon returning for subsequent examination, but also noted her concern that perhaps Plaintiff's pain medication was "masking any symptoms."

Plaintiff was examined again by Dr. Brous on 31 January 2011. Plaintiff reported to Dr. Brous that her pain symptoms had improved, but that she had some discomfort in her back that grew worse when she did "a good deal of walking or [] any pulling." Plaintiff also reported feeling a "burning pain" from shingles, with which she had been diagnosed on the previous visit.

Plaintiff continued to perform her regular job duties – which included stooping, bending, lifting, and stocking shelves – and to work her regular hours, notwithstanding the prescribed light duty work restrictions. Plaintiff testified that the "seasonal slowdown" and resulting payroll reduction for her store essentially forced her to work her usual shifts and that this worsened her injury-related symptoms. The Commission found

as fact that "during the three weeks after the January 31, 2011 medical visit, Plaintiff had to work 10 hour days, 7 days per week to prepare for the upcoming store inventory."

On 25 February 2011, Plaintiff submitted her letter of resignation to Defendant. Plaintiff testified that she resigned because of the pain she was experiencing at work and that she had indicated the same in her resignation letter.

On 3 March 2011, Plaintiff presented for treatment at Carolina East Family Medicine, where she was examined by Dr. Charles Jahrsdorfer. Plaintiff reported the 27 December 2010 incident, that she was experiencing increased pain which she believed was related to the incident, and that she was also experiencing numbness from her "*left* buttocks down to her [left] knee." (Emphasis added). Dr. Jahrsdorfer noted that Plaintiff exhibited a decreased range of motion in her back and diagnosed her with back pain with radiculopathy and muscle spasms. Dr. Jahrsdorfer ordered an MRI, which revealed a "moderately large" herniated disk on Plaintiff's *right* side.

On 21 March 2011, Plaintiff was examined by Dr. Keith Tucci, a neurosurgeon. Plaintiff again reported pain and numbness on her *left* side. Dr. Tucci reviewed the MRI and noted a "small disc bulge" on Plaintiff's *right* side; he concluded

that Plaintiff did not need surgery and instead referred her for physical therapy.

On 28 March 2011, Plaintiff was examined by Dr. Jahrsdorfer for treatment unrelated to this case. Plaintiff did not report any back pain on this visit. The nurse's notes from the visit provide that Plaintiff stated "she feels fine" and that Plaintiff had "[n]o further complaints."

Two days later, on 30 March 2011, Plaintiff filed a Form 18 notice of injury seeking workers' compensation benefits in connection with the 27 December 2010 incident and filed a Form 33 requesting that her claim be assigned for hearing. Defendant filed a Form 63 agreeing to pay medical benefits, but agreed to do so without prejudice, expressly reserving the right to later deny the compensability of Plaintiff's alleged injury.

On 2 August 2011, Plaintiff returned to Dr. Jahrsdorfer for treatment unrelated to the 27 December 2010 incident. During this visit, however, Plaintiff reported that she had continued to experience increasing back pain.

On 27 October 2011, Plaintiff presented for treatment at the Center for Scoliosis & Spinal Surgery in Greenville, where she was examined by an orthopedic surgeon, Dr. Scot Reeg. Plaintiff reported to Dr. Reeg that she had been experiencing

pain in her *right* side. Dr. Reeg reviewed Plaintiff's MRI and noted a large ruptured disk on Plaintiff's right side. Dr. Reeg determined that Plaintiff's symptoms – which included right-sided back and leg pain, limping, and a "neurologic deficit" in the leg – were consistent with both his physical examination of Plaintiff and the MRI and thus believed that Plaintiff's case was "straightforward."

Meanwhile, a hearing concerning Plaintiff's injury and the 27 December 2010 incident was held before Deputy Commissioner Mary C. Vilas on 20 September 2011. However, Deputy Commissioner Vilas filed an order holding the record open until 21 December 2011, in order to give the parties a chance to depose their witnesses, which included Dr. Jahrsdorfer, Dr. Tucci, and Dr. Reeg.

On 27 August 2012, Deputy Commissioner Vilas entered an opinion and award requiring that Defendant "pay all medical expenses incurred or to be incurred as a result of [Plaintiff's 27 December 2010] compensable injury[.]" Defendant appealed to the Commission, which, on 6 March 2013, filed an opinion and award affirming the Deputy Commissioner's opinion and award with minor modifications. The Commission concluded that Plaintiff had "sustained a compensable injury to her back . . . as a

result of an injury by accident arising out of and in the course of her employment with Defendant" and, consequently, that Defendant was required to "pay Plaintiff temporary and total disability compensation at a rate of $420.47 per week from the date of Plaintiff's resignation on February 25, 2011 and continuing until Plaintiff returns to work or further Order of the Commission." From the Commission's opinion and award, Defendant now appeals.

## II. Analysis

Defendant contends that the Commission "erred in finding and concluding that Plaintiff's alleged symptoms after January 2011 were casually related to her 27 December 2010 injury." We agree.

Our standard of review is well-established:

> Our review of an opinion and award by the Commission is limited to two inquiries: (1) whether there is any competent evidence in the record to support the Commission's findings of fact; and (2) whether the Commission's conclusions of law are justified by the findings of fact. If supported by competent evidence, the Commission's findings are conclusive even if the evidence might also support contrary findings. The Commission's conclusions of law are reviewable *de novo*.

*Legette v. Scotland Mem'l Hosp.*, 181 N.C. App. 437, 442-43, 640 S.E.2d 744, 748 (2007) (internal citations omitted).

Furthermore, "[i]t is well established in North Carolina that the Workers' Compensation Act should be liberally construed and that [w]here any reasonable relationship to employment exists, or employment is a contributory cause, the court is justified in upholding the award as arising out of employment." *Hollin v. Johnston County Council on Aging*, 181 N.C. App. 77, 84, 639 S.E.2d 88, 93 (2007) (citations and quotation marks omitted) (second alteration in original). "The evidence tending to support plaintiff's claim is to be viewed in the light most favorable to plaintiff, and plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence." *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998).

There is no dispute that Plaintiff was working within the scope of her employment when she slipped and fell in the Dollar General parking lot on 27 December 2010. Rather, the point of contention raised is whether the 27 December 2010 incident *caused* Plaintiff's present condition, such that her condition is compensable under the workers' compensation provisions of our General Statutes. Plaintiff argues that her "current medical condition is causally related to her compensable injury by accident of 27 December 2010" and that the Commission's findings

and conclusions in this respect are supported by the competent evidence of record. Defendant argues that the expert testimony presented in this case was insufficient to support the Commission's conclusion "that Plaintiff's alleged symptoms after January 2011 were causally related to her 27 December 2010 injury."

The claimant in a workers' compensation claim "has the burden of proving that his claim is compensable." *Henry v. A.C. Lawrence Leather Co.*, 231 N.C. 477, 479, 57 S.E.2d 760, 761 (1950). The plaintiff must "produce competent evidence establishing each element of compensability, including a causal relationship between the work-related accident and his or her injury." *Castaneda v. Int'l Leg Wear Grp.*, 194 N.C. App. 27, 31, 668 S.E.2d 909, 913 (2008); *see Hollar v. Montclair Furniture Co., Inc.*, 48 N.C. App. 489, 490, 269 S.E.2d 667, 669 (1980) (providing that a workers' compensation claimant must prove (1) that the injury was caused by an accident; (2) that the injury was sustained in the course of the employment; and (3) that the injury arose out of the employment"). "Although the employment-related accident 'need not be the sole causative force to render an injury compensable,' the plaintiff must prove that the accident was a causal factor by a 'preponderance of the

evidence.'" *Holley v. ACTS, Inc.*, 357 N.C. 228, 231-32, 581 S.E.2d 750, 752 (2003) (citations omitted).

Our Supreme Court has stated the following with respect to the role of expert testimony in establishing causation:

> In cases involving 'complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury.' 'However, when such expert opinion testimony is based merely upon speculation and conjecture, . . . it is not sufficiently reliable to qualify as competent evidence on issues of medical causation.' '[T]he evidence must be such as to take the case out of the realm of conjecture and remote possibility, that is, there must be sufficient competent evidence tending to show a proximate causal relation.'

*Id.* at 232, 581 S.E.2d at 753 (internal citations omitted) (alterations in original).

Here, the Commission determined that causation was established through the deposition testimony of Dr. Reeg. Although the evidence indicated that Plaintiff initially reported pain in her right side to Dr. Brous on 17 January 2011; reported "almost a total resolution of her pain" at a follow-up visit with Dr. Brous on 24 January 2011; reported improvement in her back pain in an additional follow-up with Dr. Brous on 31 January 2011; reported pain and numbness in her *left* side to Dr.

Jahrsdorfer on 3 March 2011; reported pain and numbness on her *left* side to Dr. Tucci on 21 March 2011; did not report any back pain when she was examined by Dr. Jahrsdorfer on 28 March 2011, but stated she felt "fine"; and reported pain in her *right* side when she was examined by Dr. Reeg on 27 October 2011, the Commission concluded, based on Dr. Reeg's testimony, that causation had been established as follows:

29. Dr. Reeg was asked during his deposition if Plaintiff would "be expected to have symptomology on her left side with a right-sided dis[c] presentation?" Dr. Reeg explained that if a patient has a significantly ruptured disc that has mass effect on the nerve, or the nerve is pinched, causing radicular pain, then the symptoms tend to stay one-sided. He further explained that "[i]f it's a smaller disc herniation where there's significant disruption of the disc, sometimes you'll see flipping back and forth depending on how the disc leaks rather than compresses the nerves and so I think it depends on the nature of the disc pathology that's taking place in the canal and epidural space."

30. Based on the preponderance of the evidence in view of the entire record, including but not limited to careful review of the medical evidence, the MRI report and the testimony of Doctors Jahrsdorfer, Tucci and Reeg, the Full Commission finds that Plaintiff has disc herniations . . . . The Full Commission further finds that Plaintiff fairly consistently had right-sided symptoms, with left-sided symptoms noted when she saw Dr. Tucci on March 21, 2011. Dr. Reeg was clear in his testimony that he

frequently sees symptoms present in patients in different areas than one would typically expect and that he had no reason to doubt the veracity of Plaintiff's presentation of her condition.

31. Based upon a preponderance of the evidence in view of the entire record, the Full Commission finds that both Plaintiff's right-sided low back and lower extremity and occasional left-sided lower extremity presentation of her symptoms are causally related to her December 2[7], 2010 compensable injury by accident.

We conclude that the Commission's findings of fact are inadequate to support its conclusion concerning causation set forth in "finding of fact" 31.[2] The Commission makes no finding that Dr. Reeg – or any other medical expert – stated his opinion that Plaintiff's injuries were, in fact, causally related to her workplace fall. Further, our careful review of the deposition transcript reveals that Dr. Reeg expressly refrained from offering such an opinion. Rather, he testified that he had not reviewed Plaintiff's medical records – other than the MRI taken by Dr. Jahrsdorfer – prior to his testimony and that, upon learning of Plaintiff's reports to other physicians, he could *not* express any opinion with respect to causation in this case.

---

[2] We re-characterize improperly labelled "findings of fact" as conclusions of law, which, as such, must be supported by the competent evidence of record. *State v. Sparks*, 362 N.C. 181, 185-86, 657 S.E.2d 655, 658 (2008) (reviewing *de novo* a conclusion of law that the trial court had mislabeled as a finding of fact).

For instance, when asked whether Plaintiff's pain "on one side or the other" was related to the 27 December 2010 incident, Dr. Reeg responded: "I think someone will have to make a determination on looking through these records. I'm not sure I can resolve that for you." Moreover, when Plaintiff's counsel asked Dr. Reeg whether he would be able to offer his opinion on causation if he were able to review Plaintiff's MRI, Dr. Reeg responded, "I don't think so." The exchange between Plaintiff's counsel and Dr. Reeg proceeded as follows:

> Q: Okay. What additional information . . . do you need in order to resolve that issue:
>
> A: The history comes in significantly in making that determination and the history is a little muddled by some of what I've heard tonight so that makes it harder. . . .
>
> [W]hen I saw her in the office I thought it was pretty straightforward. She was complaining solely of right-sided pain with right-sided pathology on MRI. I didn't have a lot of question about it, but when called upon to make an opinion on no right but left-sided symptoms it's hard for me to explain that. That is not typical for her type of pathology that I saw her with in October.
>
> Q: Would it make a difference if the evidence showed that the only time she complained of left-lower extremity pain was in the one medical visit that she had with Dr. Tucci on March 21, 2011?
>
> A: No. I mean, I wouldn't change my opinion

> if it was one time or three times. I still can't explain why suddenly her symptoms would switch from one side to the other based on medical reasons. The disc pathology in the spine is not going to be flopping from one side to the other so to me that's not an anatomical issue there. . . .
>
> When I see her in the office, you know, I'm not looking to established causality at that point. . . . But I would say . . . that [the] constellation of symptoms as it relates to her anatomical problem are hard for me to explain because they are not typical for people that have a significant acute disc herniation. So . . . with a reasonable degree of medical certainty can I establish causality to her symptoms? I can't. I'm not going to necessarily try to prove it or disprove it. I'm just saying that presentation is not consistent.

Notwithstanding the foregoing, Plaintiff's counsel again attempted to elicit an opinion from Dr. Reeg concerning causation:

> Q: Okay. Do you have an opinion to a reasonable degree of medical probability as to whether the mechanism of her injury, the fall in December of 2010, more likely than not caused the herniated disc that was shown on the MRI?
>
> A: I don't.

Finally, Plaintiff's counsel asked whether Dr. Reeg believed that it was *possible* that Plaintiff's fall could have caused her injury. Dr. Reeg responded that the *mechanism* of injury was possible, but "it would be hard for [him] to

establish causation based on some of the information that has come to bare tonight."

In *Edmonds v. Fresenius Med. Care*, 359 N.C. 313, 608 S.E.2d 755 (2005), our Supreme Court reversed this Court's decision to affirm the Commission's award of benefits, and adopted the dissenting opinion in that case, which stated that an expert's testimony that an action "possibly" or "could or might" have caused an injury "does not rise above a guess or speculation and does not meet the [causation] requirements set forth in *Holley*" and, further, that it was "not the role of the Commission to render expert opinions [in] cases involving complex medical questions, [where] only an expert can give opinion evidence as to the cause of an injury." *Edmonds v. Fresenius Med. Care*, 165 N.C. App. 811, 818-19, 600 S.E.2d 501, 506 (2004) (Steelman, J., dissenting) (citing *Holley*, 357 at 232, 581 S.E.2d at 753).

Here, the Commission concluded that causation had been established based on testimony from Dr. Reeg that there was a generalized *possibility* that the workplace accident might have caused Plaintiff's injuries; and, in so concluding, ignored Dr. Reeg's explicit testimony that he was unable to draw a conclusion concerning causation *in this case*. We conclude that Dr. Reeg's testimony, like the expert opinion testimony

presented in *Edmonds*, was insufficient to meet the requirements concerning causation testimony as set forth by our Supreme Court in *Holley*.

Accordingly, we hold that Plaintiff has failed to carry her burden of establishing a causal connection between the 27 December 2010 incident and the injuries underlying her present workers' compensation claim. The Commission's 6 March 2013 opinion and award is

REVERSED.

Chief Judge MARTIN and Judge STEELMAN concur.

Report per Rule 30(e).