MELVIN McLAUGHLIN, Employee, Plaintiff v. STAFFING SOLUTIONS, Employer, GALLAGHER BASSETT SERVICES, Third-Party Administrator, Defendants

No. COA09-739

(Filed 3 August 2010)

### 1. Workers' Compensation— suitable employment—within restrictions—competent evidence

Competent evidence in the record supported the Industrial Commission's finding of fact in a workers' compensation case that between the time plaintiff was terminated from his employment with defendant and the time plaintiff reached maximum medical improvement, plaintiff was unable to find suitable employment within the restrictions related to his injury.

### 2. Workers' Compensation— total disability compensation— failure to obtain other employment—due to injury-related work restrictions

The Industrial Commission did not erroneously conclude that plaintiff was eligible for continuing temporary total disability compensation under the test established in *Seagraves v. Austin Co. of Greensboro*, 123 N.C. App. 228. The Commission's conclusion that plaintiff's failure to obtain other employment was due to his injury-related work restrictions was supported by the Commission's findings of fact. Moreover, contrary to defendant's contention, the *Seagraves* test is not applicable only when plaintiff's injury played a role in his termination.

### 3. Workers' Compensation— disability established

The Industrial Commission did not err in finding that plaintiff was disabled within the meaning of N.C.G.S. § 97-2(9). The Commission's findings of fact established that plaintiff was disabled pursuant to two methods enumerated in *Russell v. Lowe's Prod. Distrib.*, 108 N.C. App. 762.

### 4. Workers' Compensation—fees and costs for appeal

Plaintiff's request for attorney fees for the appeal to the Court of Appeals in a workers' compensation case was granted as plaintiff satisfied the statutory requirements of N.C.G.S. § 97-88.

Appeal by defendants from Opinion and Award entered 24 February 2009 by the North Carolina Industrial Commission. Heard in the Court of Appeals 5 November 2009.

*Albert S. Thomas, Jr., for plaintiff-appellee.*

*Rudisill, White & Kaplan, P.L.L.C., by Stephen Kushner, for defendant-appellant.*

STROUD, Judge.

Staffing Solutions and Gallagher Bassett Services (collectively referred to as "defendants") appeal an opinion and award by the Full Commission arguing that the Commission erred in awarding temporary total disability compensation to Melvin McLaughlin ("plaintiff"). For the following reasons, we affirm the Full Commission's award and remand for a determination of the appropriate amount of costs to be taxed to defendants.

## I. Background

The Full Commission ("Commission"), by Chairman Pamela T. Young, made the following uncontested findings of fact:

1. Plaintiff is 58 years old. Plaintiff has a high school education and two years of courses at Ohio State University in mechanical engineering. Plaintiff explained that he took non-accredited courses in mechanical engineering to improve his mechanical ability in relation to a maintenance job he had at the time with American Can. He also served in the United States Marine Corp for two years and was honorably discharged.

2. In the last several years, plaintiff has held a variety of jobs. He was a plant manager for two manufacturing companies that produced plastic bottles, for approximately four years each. He then did some temporary assignment work over the next few years, including a four-year stint with Defendant-Employer. Through Defendant-Employer, Plaintiff was assigned to work as a shipping and receiving clerk for Nomacork, a company that produces corks for wine bottles. Plaintiff also testified that he worked for some time in the past as a truck dispatcher.

3. Plaintiff sustained an admittedly compensable injury by accident on September 30, 2004. While on the Nomacork premises, another employee drove a forklift into a stack of crates and a crate weighing approximately 700 pounds fell onto Plaintiff's left

side. Plaintiff was pinned by the crate, and it had to be moved off of him.

4. After the crate was moved, Plaintiff was inspected by his co-workers and it was determined that he was already getting black and blue. Accordingly, Plaintiff was taken by ambulance to Wake Med, where he was diagnosed with multiple injuries including a fractured scapula, fractured ribs, a punctured lung, a punctured spleen, and a bruise on his neck. Plaintiff testified that he stayed in the ICU for more than a week.

5. After his discharge, Plaintiff's treatment focused primarily on his left shoulder. Plaintiff came under the care of Dr. Nelms, his family doctor, who referred him to Dr. Robert C. Martin, an orthopedic surgeon.

6. Dr. Martin first saw Plaintiff on May 2, 2005. By the time Plaintiff presented to Dr. Martin, many of his initial injuries had already healed. Plaintiff had one remaining rib fracture, which Dr. Martin indicated would heal over time. He also had some residual neck pain, for which no specific treatment was recommended.

7. The primary focus of Dr. Martin's treatment was the left shoulder. Plaintiff reported continued pain, stiffness, and decreased function. Dr. Martin obtained an MRI, which revealed a partial rotator cuff tear, significant impingement, and AC joint arthropathy. Dr. Martin recommended surgical repair.

8. Plaintiff was able to return to work at Nomacork filling out bills of laden [sic] and scanning crates with a handheld bar code device for a short time before his surgery.

9. Dr. Martin performed surgery on July 25, 2005, specifically an arthroscopic subacromial decompression, distal clavulectomy, and debridement of a glenoid labral tear. Following surgery, Dr. Martin recommended a course of rehabilitative therapy. Plaintiff was kept out of work until February 22, 2006, when Dr. Martin allowed him to return to work for four hours a day with certain light duty restrictions.

10. Plaintiff sought work after his release, but was only able to find a couple of odd jobs. He did those jobs until they ended, then he called Defendant-Employer seeking further employment. Defendant-Employer offered him a position in its office in Raleigh.

11. Plaintiff worked for Defendant-Employer for four hours per day through March 16, 2006. On the morning of March 16, 2006, Mr. Silvestre Gonzalez, Defendant-Employer's area manager, was informed by another employee that Plaintiff was giving off a strong odor of alcohol. Mr. Gonzalez proceeded to Plaintiff's workstation, where he himself noticed the odor.

12. Mr. Gonzalez confronted Plaintiff, in the presence of at least one witness, regarding the odor of alcohol. Plaintiff responded that the assertion was ludicrous, and that he had not been drinking. Mr. Gonzalez asked him to take a breathalyzer, consistent with company policy. Plaintiff refused to take a breathalyzer and left the premises.

13. According to Mr. Gonzalez's testimony, it is contrary to Defendant-Employer's company policy for an employee to have consumed, or be under the influence, of alcohol during work hours. It is also against company policy to refuse a breathalyzer when requested. A violation of either of those policies is grounds for immediate termination of any employee. Plaintiff would have been informed of these procedures when he began his employment. Mr. Gonzalez testified that if he himself went into work the next day and refused a breathalyzer test upon request, he would be fired.

14. Plaintiff denied having consumed alcohol on the day in question. Plaintiff did not dispute that he was offered a breathalyzer test on March 16, 2006, and acknowledged he did not take the test. Plaintiff acknowledged that drinking or being under the influence of alcohol on the job would be grounds for termination. He also acknowledged that refusing a breathalyzer was grounds for termination.

15. The evidence establishes and the Full Commission finds that Plaintiff was terminated for violation of company policy for refusing to take a breathalyzer, that such a refusal would have resulted in the termination of a nondisabled employee, and that Plaintiff's termination was unrelated to Plaintiff's compensable injuries and claim. Accordingly, Plaintiff's termination is deemed to constitute a constructive refusal of suitable employment.

16. Plaintiff has been out of work since his March 16, 2006 termination. Following his termination, Plaintiff sought employment through the VA representative in Wilson, North Carolina and

through the Employment Security Commission. They provided him several leads, which he pursued, but he was unable to find work for only four hours per day. Plaintiff also testified that he met with a vocational rehabilitation counselor provided by Defendant for several weeks, but was again unable to locate a job that would let him work only four hours per day.

17. Per Dr. Martin's testimony, by April 6, 2006, Plaintiff had reached maximum medical improvement. Plaintiff underwent an FCE at Dr. Martin's direction, which indicated that Plaintiff met the standards for sedentary work (may exert up to 10 pounds of force occasionally and negligible amount of force frequently), with the exception that he could not lift any weight from waist to shoulder or shoulder to overhead with his left arm. On April 24, 2006, Dr. Martin released Plaintiff to return to work within the restrictions outlined by the FCE. Dr. Martin released Plaintiff from his care and assigned a 28% permanent partial disability rating to the left upper extremity.

18. Plaintiff underwent a second opinion evaluation by Dr. Kevin Speer, an orthopedic surgeon, on October 4, 2006. Dr. Speer testified that he found on exam that Plaintiff had a very stiff shoulder and he could only elevate his arm actively to about chin level, which was estimated at a 50% loss in range of motion. He had extensive bursitis in his shoulder and his shoulder muscle exhibited atrophy compared to the opposite side. Dr. Speer agreed that Plaintiff was at maximum medical improvement regarding his left shoulder and assigned a 35% permanent disability rating.

19. With respect to plaintiff's ability to work, Dr. Speer testified that Plaintiff had a very dysfunctional and painful shoulder and it was doubtful that vocational efforts or retraining would be successful even with 'the most remedial shoulder-sparing work efforts.' Dr. Speer testified that, within a reasonable degree of medical certainty, plaintiff would more likely than not need to be totally disabled due to his shoulder injury.

20. Plaintiff testified that he has not looked for work since Dr. Speer told him he was disabled.

21. Defendant has continued to pay Plaintiff temporary partial disability benefits since his March 2006 termination.

. . .

23. The opinions of both Drs. Martin and Speer are found to be credible. With respect to the period after plaintiff reached MMI in April 2006, the totality of the medical and other evidence establishes and the Full Commission finds that plaintiff was and is severely limited by his left shoulder injury and has been totally disabled since his termination by Defendant-Employer.

24. Plaintiff testified that he requires assistance from his wife in order to dress and perform certain personal grooming activities. Plaintiff testified that his wife does most of the yard work and that he is not able to help her with household cleaning. Plaintiff acknowledged that he does some yard work, including cutting the grass with a riding lawnmower, using a weed eater, and light raking. Plaintiff's wife testified that Plaintiff is not able to help with yard work and housework as much as he did before his injury. Plaintiff's wife testified that Plaintiff is able to load clothes into the washer and load the dishwasher, but he cannot move clothes to the dryer or put away dishes that are in upper cabinets. Plaintiff's wife is employed outside the home during the day.

25. No medical evidence was submitted showing that any physician recommended attendant care or home assistance for Plaintiff.

26. The Full Commission finds that Plaintiff's wife is not entitled to compensation for attendant care for Plaintiff.

Based on its findings, the Commission concluded:

1. Plaintiff sustained a compensable injury by accident on or about September 30, 2004, resulting in multiple injuries, including to his left shoulder. N.C. Gen. Stat. § 97-2(6).

2. Plaintiff constructively refused suitable employment provided by Defendant-Employer on March 16, 2006. Plaintiff's termination was for cause, and similar behavior by a non-disabled employee would have resulted in that employee's termination as well. Plaintiff's termination was not related to his compensable injury. However, Plaintiff was totally disabled following his termination based on his failure to obtain other employment due to his injury-related work restrictions. *Seagraves v. Austin Co. of Greensboro*, 123 N.C. App. 228, 472 S.E.2d 397 (1996); *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 597 S.E.2d 695 (2004); N.C. Gen. Stat. § 97-32.

3. Based on the medical and other evidence, Plaintiff is and has been temporarily totally disabled since his termination by Defendant-Employer. Plaintiff is entitled to receive ongoing temporary total disability compensation beginning March 17, 2006. *Russell v. Lowes Product Distribution,* 108 N.C. App. 762, 425 S.E.2d 454 (1993); N.C. Gen. Stat. § 97-2(9).

4. Plaintiff is entitled to have Defendant pay for medical treatment related to his compensable injury. N.C. Gen. Stat. § 97-25.

5. Plaintiff's wife is not entitled to compensation for attendant or home care for Plaintiff. N.C. Gen. Stat. § 97-25.

Defendants were ordered to pay: (1) "temporary total disability compensation in the amount of $471.00 per week beginning March 17, 2006 and continuing until further order of the Commission[;]" (2) "all medical expenses incurred or to be incurred as a result of Plaintiff's compensable injury by accident on September 30, 2004, for so long as such evaluations, examinations, and treatments may reasonably be required to effect a cure, provide relief, or tend to lessen the period of disability, when bills for the same have been approved in accordance with the provisions of the Act[;]" and (3) "reasonable attorney's fee of twenty-five (25%) of the compensation due Plaintiff under paragraph 1 of this Award[.]" On 25 March 2009, defendants filed notice of appeal.

## II. Standard of Review

This Court has previously stated that

review of a decision of the Industrial Commission is limited to determining whether there is any competent evidence to support the findings of fact, and whether the findings of fact justify the conclusions of law. The findings of the Commission are conclusive on appeal when such competent evidence exists, even if there is plenary evidence for contrary findings. This Court reviews the Commission's conclusions of law *de novo.*

*Egen v. Excalibur Resort Prof'l,* 191 N.C. App. 724, 728, 663 S.E.2d 914, 918 (2008) (citation omitted).

## III. Constructive Refusal and Continuation of Benefits

[1] Defendants first argue that competent evidence in the record does not support the following portion of the Commission's finding of

fact No. 22[1]: "the evidence is sufficient to establish that between his termination and reaching MMI in April 2006, plaintiff was unable to find suitable employment within his part-time and other restrictions related to his injury." Defendants argue that "there is no evidence regarding plaintiff's activities" following his 16 March 2006 termination and reaching maximum medical improvement on 6 April 2006.

Plaintiff's testimony at the hearing before Deputy Commissioner Ronnie E. Rowell on 17 September 2007 provided competent evidence for finding of fact No. 22:

Plaintiff's Counsel: Okay. Now when you–after being terminated by Staffing Solutions, did you seek employment after that?

Plaintiff: Yes, I did.

Q: And do you recall where you went and how many jobs, perhaps, that you applied for?

A: I don't remember.

Q: Were you ever offered any vocational assistance?

A: Yes, by the Workman's Comp [sic] rep.

Q: All right. And were you able to find employment?

A: No, sir.

Q: Do you know why you were unable to find employment?

A: (Unintelligible) four hours and a lot of compan[ies] don't want you to work just four hours.

The Commission's finding of fact No. 9, uncontested by defendants, states that because of plaintiff's injuries, he was restricted to working only four hours a day. Plaintiff testified that following his termination, he attempted unsuccessfully to find work, but he could not find employment that would accommodate his restriction to working only four hours a day. Therefore, there is competent evidence in the record to support finding of fact No. 22. Defendants do not bring forth

---

1. In their brief on appeal, defendants claim that their first argument is based on assignments of error 1 and 4. However, in the record on appeal, defendants have two assignments of error labeled as number "4." The first assigns error to the Commission's finding of fact number 16 and the second assigns error to the Commissions' finding of fact number 22. However, on appeal defendants only make an argument in their brief against a portion of finding of fact number 22 but make no mention of finding of fact number 16. Therefore, any argument as to the Commission's finding of fact 16 is deemed abandoned. N.C.R. App. P. 28(b)(6).

any argument against the Commission's remaining findings of fact, so they are binding on appeal. *Johnson v. Herbie's Place*, 157 N.C. App. 168, 180, 579 S.E.2d 110, 118, *disc. review denied*, 357 N.C. 460, 585 S.E.2d 760 (2003).

**[2]** Defendants next contend that the Commission erroneously concluded that plaintiff was eligible for continuing temporary total disability compensation under the test established in *Seagraves v. Austin Co. of Greensboro*, 123 N.C. App. 228, 472 S.E.2d 397 (1996), and adopted by *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 597 S.E.2d 695 (2004). Defendants contend that the Commission correctly concluded that plaintiff had constructively refused employment, but the Commission erroneously concluded that plaintiff was totally disabled from work. Defendants contend that this conclusion was based on contradictory testimony from Drs. Martin and Speer, and there was no evidence regarding plaintiff's job search during the period of time following his termination. Therefore, there was no evidence supporting plaintiff's total disability and the Commission erred as a matter of law "in failing to suspend plaintiff's compensation in light of its finding that plaintiff constructively refused an offer of suitable employment[.]"

In *Seagraves*, this Court held that when an employee who had sustained a compensable injury and was "provided light duty or rehabilitative employment [was] terminated from such employment for misconduct or other fault on the part of the employee, such termination [did] not automatically constitute a constructive refusal to accept employment so as to bar the employee from receiving benefits for temporary partial or total disability." 123 N.C. App. at 233-34, 472 S.E.2d at 401. Instead,

> the test is whether the employee's loss of, or diminution in, wages is attributable to the wrongful act resulting in loss of employment, in which case benefits will be barred, or whether such loss or diminution in earning capacity is due to the employee's work-related disability, in which case the employee will be entitled to benefits for such disability.

*Id.* at 234, 472 S.E.2d at 401. "Thus, under the *Seagraves'* test, to bar payment of benefits, an employer must demonstrate initially that: (1) the employee was terminated for misconduct; (2) the same misconduct would have resulted in the termination of a nondisabled employee; and (3) the termination was unrelated to the employee's compensable injury." *McRae*, 358 N.C. at 493, 597 S.E.2d at 699.

An employer's successful demonstration of such evidence is 'deemed to constitute a constructive refusal' by the employee to perform suitable work, a circumstance that would bar benefits for lost earnings, '*unless* the employee is then able to show that his or her inability to find or hold other employment . . . at a wage comparable to that earned prior to the injury[] is due to the work-related disability.' *Id.* (emphasis added). In other words, a showing of employee misconduct is not dispositive on the issue of benefits if the employee can demonstrate that his or her subsequent failure to perform suitable work or find comparable work was the direct result of the employee's work-related injuries. Under *Seagraves*, the employee would be entitled to benefits if he or she can demonstrate that work-related injuries, and not the circumstances of the employee's termination, prevented the employee from either performing alternative duties or finding comparable employment opportunities.

*Id.* at 493-94, 597 S.E.2d at 699 (quoting *Seagraves*, 123 N.C. App. at 234, 472 S.E.2d at 401.).

Contrary to defendants' argument, the focus of the second part of the *Seagraves* test is not whether there was a finding that plaintiff was "totally disabled" but whether plaintiff's subsequent failure to perform or find comparable work was the direct result of plaintiff's "work-related injuries[.]" *See id.* The Commission's conclusion of law No. 3, that plaintiff's "failure to obtain other employment [was] due to his injury-related work restrictions[,]" was supported by the Commission's findings of fact 9, 16, and 22. The Commission's finding of fact No. 9, uncontested by defendants, states that following plaintiff's work-related shoulder injury, Dr. Martin "allowed him to return to work for four hours a day with certain duty restrictions." The Commission's finding of fact 16, uncontested by defendants, states that following plaintiff's termination on 16 March 2006, he sought employment through a VA representative, the Employment Security Commission, and the vocational rehabilitation counselor provided by defendants but was unable to locate a job that would let him work only four hours a day. As stated above, the Commission found in finding of fact 22 that following plaintiff's termination, he "was unable to find suitable employment within the part-time and other restrictions related to his injury." These findings support the Commission's conclusion that plaintiff was unable to find other employment due to his work-related shoulder injury, and plaintiff was entitled to temporary total disability compensation. Therefore, we are not persuaded by defendants' contentions.

McLAUGHLIN v. STAFFING SOLUTIONS

[206 N.C. App. 137 (2010)]

Defendants also argue that the test in *Seagraves* is applicable only when "the claimant's injury played a role in the termination." Defendants contend that "the vast majority of cases on this subject,"[2] including *Castaneda v. Int'l Leg Wear Group*, 194 N.C. App. 27, 668 S.E.2d 909 (2008), *affirmed per curiam*, 363 N.C. 369, 677 S.E.2d 454 (2009), are "easily distinguishable from the instant scenario . . . because in each of those cases . . . *the claimant's injury played a role in the termination.*" (emphasis added.) In *Castaneda*, after her injury by accident, the

> plaintiff was in severe pain. She called work and stayed out that day. [The next day], when plaintiff returned to work, she asked to be sent to a doctor. Defendant had plaintiff go to the office where she was requested to sign a 'written verbal' warning about work performance. Plaintiff believed she would be terminated if she signed the form, but did initial her name to the form. Defendant was not satisfied and terminated plaintiff. Plaintiff had no prior misconduct or warnings.

194 N.C. App. at 34, 668 S.E.2d at 914-15. The Commission found that "there is insufficient evidence to support a finding that plaintiff was terminated for misconduct." *Id.* at 35, 668 S.E.2d at 915. However, this Court held that "[e]ven if the Full Commission erred in determining that plaintiff was not terminated for misconduct, if she showed that her inability to find other employment at a wage comparable to the wage she earned prior to the injury is due to a work-related disability, then her payments are not barred. *Seagraves, supra.*" *Id.*

Thus, defendants' argument misinterprets the third factor identified by *Seagraves* and *McRae*: that the plaintiff must show that "the termination was *unrelated* to the employee's compensable injury." *McRae*, 358 N.C. at 493, 597 S.E.2d at 699. (emphasis added). If "the claimant's injury played a role in the termination" as argued by defendants, the termination would be *related* to the employee's compensable injury and the *Seagraves* test would be inapplicable. *See id.* However, here, the Commission's conclusion No. 2 stated that plaintiff had "constructively refused employment[,]" as plaintiff's "termination was for cause, and similar behavior by a non-disabled employee would have resulted in that employee's termination as well[,]" and plaintiff's "termination was not related to his compensable injury." As stated above, defendants agree that "the Commission

---

2. Defendants cite only one published case, *Casteneda*, in support of this proposition and one unpublished case. We address only *Casteneda*.

correctly concluded that plaintiff had constructively refused employment" because his termination was clearly not related to· his compensable injury. Therefore, we are not persuaded by defendants' argument.

The fact that defendants proved that plaintiff had constructively refused employment did not end the inquiry, as the burden then shifts back to the plaintiff to "demonstrate that his or her subsequent failure to perform suitable work or find comparable work was the direct result of the employee's work-related injuries." *McRae*, 358 N.C. at 494, 594 S.E.2d at 699. An employee is not entitled to benefits after his termination for cause unrelated to his injury " '*unless* the employee is then able to show that his or her inability to find or hold other employment . . . at a wage comparable to that earned prior to the injury[] is due to the work-related disability.' " *Id.* (quoting *Seagraves*, 123 N.C. App. at 234, 472 S.E.2d at 401.). In other words, a showing of employee misconduct is not dispositive on the issue of benefits "if the employee can demonstrate that his or her subsequent failure to perform suitable work or find comparable work was the direct result of the employee's work-related injuries." *Id.* Thus, defendants' argument that plaintiff's termination must be related to his compensable injury is without merit.

## IV. Plaintiff's Total Disability

**[3]** Defendants next contend that the Commission erred "as a matter of law in finding that employee-plaintiff was disabled within the meaning of N.C. Gen. Stat. § 97-2(9)" because plaintiff "returned to work and earned wages prior to his termination, and in light of evidence from his treating physician that plaintiff was capable of working within restrictions."

N.C. Gen. Stat. § 97-2(9) (2004) states that the term disability "means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." Therefore, "[u]nder the Workmen's [sic] Compensation Act disability refers not to physical infirmity but to a diminished capacity to earn money." *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 434-35, 342 S.E.2d 798, 804 (1986) (citation and quotation marks omitted). The employee can meet his burden to show that "he is unable to earn the same wages he had earned before the injury, either in the same employment or in other employment[,]" in one of four ways:

(1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable

of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.

*Russell v. Lowe's Prod. Distrib.*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (citations and quotation marks omitted).

The Commission summarized the relevant evidence related to plaintiff's disability in findings of fact 16, 17, 18, 19 and 23:

16. Plaintiff has been out of work since his March 16, 2006 termination. Following his termination, Plaintiff sought employment through the VA representative in Wilson, North Carolina and through the Employment Security Commission. They provided him several leads, which he pursued, but he was unable to find work for only four hours per day. Plaintiff also testified that he met with a vocational rehabilitation counselor provided by Defendant for several weeks, but was again unable to locate a job that would let him work only four hours per day.

17. Per Dr. Martin's testimony, by April 6, 2006, Plaintiff had reached maximum medical improvement. Plaintiff underwent an FCE at Dr. Martin's direction, which indicated that Plaintiff met the standards for sedentary work (may exert up to 10 pounds of force occasionally and negligible amount of force frequently), with the exception that he could not lift any weight from waist to shoulder or shoulder to overhead with his left arm. On April 24, 2006, Dr. Martin released Plaintiff to return to work within the restrictions outlined by the FCE. Dr. Martin released Plaintiff from his care and assigned a 28% permanent partial disability rating to the left upper extremity.

18. Plaintiff underwent a second opinion evaluation by Dr. Kevin Speer, an orthopedic surgeon, on October 4, 2006. Dr. Speer testified that he found on exam that Plaintiff had a very stiff shoulder and he could only elevate his arm actively to about chin level, which was estimated at a 50% loss in range of motion. He had extensive bursitis in his shoulder and his shoulder muscle exhib-

ited atrophy compared to the opposite side. Dr. Speer agreed that Plaintiff was at maximum medical improvement regarding his left shoulder and assigned a 35% permanent disability rating.

19. With respect to plaintiff's ability to work, Dr. Speer testified that Plaintiff had a very dysfunctional and painful shoulder and it was doubtful that vocational efforts or retraining would be successful even with 'the most remedial shoulder-sparing work efforts.' Dr. Speer testified that, within a reasonable degree of medical certainty, plaintiff would more likely than not need to be totally disabled due to his shoulder injury.

. . .

23. The opinions of both Drs. Martin and Speer are found to be credible. With respect to the period after plaintiff reached MMI in April 2006, the totality of the medical and other evidence establishes and the Full Commission finds that plaintiff was and is severely limited by his left shoulder injury and has been totally disabled since his termination by Defendant-Employer.

Defendants assign error to the Commission's findings of fact 16, 19, and 23, but do not present any argument on appeal challenging those findings of fact. Therefore, these findings of fact are binding on appeal. *See Haley v. ABB, Inc.*, 174 N.C. App. 469, 474, 621 S.E.2d 180, 183 (2005) ("Findings of fact to which [an appellant] has not assigned error and argued in his brief are conclusively established on appeal." (citations and quotation marks omitted)). Instead, defendants argue that the opinions of Dr. Martin and Dr. Speer as set forth in the Commission's findings are contradictory as Dr. Martin testified that plaintiff was capable of working within restrictions but Dr. Speer stated that plaintiff was totally disabled. Defendants contend that "[t]hose positions are clearly inconsistent with one another, and it is logically impossible to accept them both." Defendants further argue that the Commission erroneously relied on this contradictory testimony of Dr. Martin and Dr. Speer in making its conclusion that plaintiff was totally disabled due to his shoulder injury. Contrary to defendants' contentions, the Commission's findings establish that plaintiff was disabled pursuant to two of the methods enumerated in *Russell*.

First, the Commission's findings establish that following plaintiff's 16 March 2006 termination, he was "capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment[.]" *Russell*, 108 N.C. App. at 765, 425

S.E.2d at 457. Finding of fact 17 addresses plaintiff's limitations on his ability to work. Finding No. 16 sets forth plaintiff's inability to find employment within his restrictions despite his reasonable efforts.

The Commission's findings also establish that by October 2006 "medical evidence" showed that plaintiff was "physically" disabled "as a consequence of the work related injury, incapable of work in any employment[.]" *Id.* Finding of fact 18 states that plaintiff went to see Dr. Speer on 4 October 2006 for examination of his left shoulder. Finding of fact 19 states that it was Dr. Speer's opinion that "Plaintiff had a very dysfunctional and painful shoulder and it was doubtful that vocational efforts or retraining would be successful even with 'the most remedial shoulder-sparing work efforts[,]' " and that "within a reasonable degree of medical certainty, plaintiff would more likely than not need to be totally disabled due to his shoulder injury." This medical evidence establishes that it was Dr. Speer's opinion that plaintiff was physically disabled as a consequence of his work-related shoulder injury and incapable of work. *See id.*

Therefore, the Commission's findings, summarizing the testimony of Dr. Martin and Dr. Speer, were not contradictory but demonstrated that at two different times following plaintiff's termination, plaintiff established that he was disabled by two of the methods enumerated in *Russell.* We hold that the above findings support the Commission's conclusion that plaintiff was temporarily totally disabled. Therefore, defendants' assignment of error is overruled.

## V. Attorney's Fees for Appeal

**[4]** Plaintiff has requested an award of attorney's fees and expenses for this appeal. Pursuant to N.C. Gen. Stat. § 97-88 (2004), "the Commission or a reviewing court may award costs, including attorney's fees, to an injured employee 'if (1) the insurer has appealed a decision to the full Commission or to any court, and (2) on appeal, the Commission or court has ordered the insurer to make, or continue making, payments of benefits to the employee.' " *Brooks v. Capstar Corp.,* 168 N.C. App. 23, 30, 606 S.E.2d 696, 701 (2005) (quoting *Brown v. Public Works Comm.,* 122 N.C. App. 473, 477, 470 S.E.2d 352, 354 (1996) (awarding plaintiff attorney's fees pursuant to N.C. Gen. Stat. § 97-88 when defendant had appealed the Full Commission's order directing payment of additional benefits to plaintiff, even though plaintiff had previously appealed "within the Commission")). Here, even though plaintiff appealed the deputy commissioner's decision "within the Commission[,]" *see id.,* defendant appealed the Full

Commission's order to this Court, and we affirm the Commission's order that defendants pay temporary total disability compensation to plaintiff. Therefore, the statutory requirements of N.C. Gen. Stat. § 97-88 are met. Accordingly, we remand this matter to the Commission with instruction that the Commission determine the amount due plaintiff for the costs incurred as a result of the appeal to this Court, including reasonable attorney's fees.

### VI. Conclusion

As the Commission's findings of fact are supported by competent evidence and those findings support the conclusions of law, *Egen*, 191 N.C. App. at 728, 663 S.E.2d at 918, we affirm the Commission's opinion and award and remand this matter for a determination of the appropriate amount of costs to be taxed to defendants.

AFFIRMED AND REMANDED.

Judges STEPHENS and BEASLEY concur.