TYSON, Judge.
 

 *269
 
 Cynthia Frank ("Plaintiff") appeals from the Opinion and Award of the North Carolina Industrial Commission ("Commission"), which determined the amount of her average weekly wages and compensation rate. We affirm the Commission's Opinion and Award.
 

 I. Background
 

 Plaintiff was employed by the Charlotte Symphony Orchestra ("Defendant-Employer") as a violist. On 24 June 2012, Plaintiff filed a Form 18 ("Notice of Accident to Employer and Claim of Employee, Representative, or Dependent") with the Commission. She alleged sustaining a compensable injury and/or occupational disease to her right shoulder. Plaintiff listed her average weekly wages as "$760.00+" on the Form 18, and stated both the number of hours per day and the days
 
 *270
 
 of the week she worked "varies." Plaintiff listed her date of injury as 15 December 2013.
 

 Defendant-Employer and its insurance carrier (collectively, "Defendants") filed a Form 61 ("Denial of Workers' Compensation Claim"). Plaintiff's claim was heard before the deputy commissioner on 22 June 2015. Prior to the hearing, Defendants accepted
 
 *621
 
 Plaintiff's shoulder injury as compensable. The parties agreed the only issue to be determined by the deputy commissioner was the calculation of Plaintiff's average weekly wages.
 

 The deputy commissioner issued her Opinion and Award and determined Plaintiff's average weekly wages to be $757.94, which produced a compensation rate of $505.32. Plaintiff appealed the determination of her average weekly wages to the Commission.
 

 By Opinion and Award dated 7 December 2016, the Commission unanimously affirmed the deputy commissioner's determination of Plaintiff's average weekly wages and compensation rate. Plaintiff appeals.
 

 II. Jurisdiction
 

 Jurisdiction lies in this Court from opinion and award of the Commission pursuant to
 
 N.C. Gen. Stat. §§ 97-86
 
 and 7A-27(b) (2015).
 

 III. Average Weekly Wages
 

 Plaintiff's sole argument on appeal asserts the Commission erred by applying the incorrect method under
 
 N.C. Gen. Stat. § 97-2
 
 (5) (2015) to calculate her average weekly wages. We disagree.
 

 A. Standard of Review
 

 This Court reviews an opinion and award of the Commission to determine whether the findings of fact are supported by competent evidence and whether the conclusions of law are supported by the findings of fact.
 
 Barham v. Food World
 
 ,
 
 300 N.C. 329
 
 , 331,
 
 266 S.E.2d 676
 
 , 678 (1980). However, "[t]his Court reviews the Commission's conclusions of law
 
 de novo
 
 ."
 
 McLaughlin v. Staffing Solutions
 
 ,
 
 206 N.C. App. 137
 
 , 143,
 
 696 S.E.2d 839
 
 , 844 (2010) (citation omitted).
 

 "The determination of the plaintiff's 'average weekly wages' requires application of the definition set forth in the Workers' Compensation Act, [
 
 N.C. Gen. Stat. § 97-2
 
 (5) ], and the case law construing that statute and thus raises an issue of law, not fact."
 
 Swain v. C & N Evans Trucking Co.
 
 ,
 
 126 N.C. App. 332
 
 , 335-36,
 
 484 S.E.2d 845
 
 , 848 (1997).
 

 *271
 

 B. Commission's Findings
 

 No testimony was presented to the Commission as the parties stipulated to the facts:
 

 1. Plaintiff has been employed as a violist with Defendant-Employer for 17 years.
 

 2. Plaintiff's contracts for the 2012-2013 and 2013-2014 seasons and the referenced collective bargaining agreements for that period are stipulated. Wage printouts from the Defendant-Employer are stipulated. W-2 and contract from the Chautauqua Symphony are stipulated.
 

 3. Defendant-Employer's regular season yearly runs from September through May. Each musician's individual contract specifies a weekly wage. In addition, there are additional payments available, such as "move up" pay, which compensates the musician for sitting in at a higher level for an absent colleague; broadcast pay, for when the concert is recorded; overtime for special or specific programs; and seniority pay. Plaintiff also received additional compensation through the Defendant-Employer for clinics she taught at local high schools.
 

 4. Defendant-Employer operates a summer season, which usually runs 4 weeks in June and July. Participation in the summer season is optional for all musicians but, if a musician plays during the summer season, the musician is compensated at the weekly rate provided in the individual contract.
 

 5. Rehearsals and concerts are called "services." Each regular season runs the number of weeks specified in the contract. Both the 2012-2013 regular season and the 2013-2014 regular season were 33 weeks. During the course of the regular season, there are three weeks that are designated as vacation weeks. There are no services scheduled during the off season. Any week that has no services scheduled and is not a designated vacation week is a layoff week. For all layoff weeks, musicians may file for unemployment checks from the N.C. Division of Employment
 
 *272
 
 Security. Until recently, Defendant-Employer applied for unemployment
 
 *622
 
 on behalf of its musicians. If a musician elects not to participate in the summer season, the musician cannot receive unemployment during that four week period. During 2013, plaintiff collected 3 weeks of unemployment benefits at a weekly rate of $535.00 per week. These benefits were charged to Defendant-Employer.
 

 6. The collective bargaining agreement expressly allows the musicians to have other employment as long as it does not interfere with performance of the contracted services. Even if it does conflict, there is a procedure by which the musician can request leave.
 

 7. In the summer of 2013, Plaintiff played for Defendant-Employer for two weeks out of the four-week summer season. Plaintiff played all 33 weeks of the portions of the 2012-2013 season and 2013-2014 that fell in the calendar year 2013. Therefore, of the 52 weeks preceding Plaintiff's accepted date of injury, December 15, 2013,
 
 Plaintiff performed services for Defendant-Employer a total of 36 weeks
 
 . In the year prior to the injury date in this claim, the vacation weeks were December 24, 2012 through January 6, 2013 and March 4, 2013 through March 10, 2013. (emphasis supplied).
 

 8. Plaintiff's gross wages from Defendant-Employer for the 52 weeks preceding Plaintiff's date of injury were $39,412.83, a figure which includes all compensation referenced in paragraph 3 above.
 

 9. For several years, including 2013, Plaintiff has worked during the summers as a violist for the Chautauqua Symphony in New York state. The Chautauqua season begins in the first week of July and continues for eight weeks. Plaintiff's weekly wages for this job were set by contract at $1,080.00 gross compensation per week. They also paid her approximately $6,000.00 as a housing allowance for the season. Plaintiff's employment for the Chautauqua Symphony and Defendant-Employer did not overlap and was not concurrent.
 

 *273
 

 C. Statutory Methods for Calculating Average Weekly Wages
 

 N.C. Gen. Stat. § 97-2
 
 (5) governs the determination of an injured employee's average weekly wages:
 

 (5) Average Weekly Wages.-[1] "Average weekly wages" shall mean the earnings of the injured employee in the employment in which the employee was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury ... divided by 52; [2] but if the injured employee lost more than seven consecutive calendar days at one or more times during such period, although not in the same week, then the earnings for the remainder of such 52 weeks shall be divided by the number of weeks remaining after the time so lost has been deducted. [3] Where the employment prior to the injury extended over a period of fewer than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed; provided, results fair and just to both parties will be thereby obtained. [4] Where, by reason of a shortness of time during which the employee has been in the employment of his employer or the casual nature or terms of his employment, it is impractical to compute the average weekly wages as above defined, regard shall be had to the average weekly amount which during the 52 weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment in the same locality or community.
 

 [5] But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.
 

 N.C. Gen. Stat. § 97-2
 
 (5) (bracketed numerals supplied).
 

 The statute provides five possible and hierarchal methods for calculating the injured
 
 *623
 
 employee's average weekly wages. "[I]t is clear that this statute establishes an order of preference for the calculation method to be used[.]"
 
 *274
 

 Bond v. Foster Masonry, Inc.
 
 ,
 
 139 N.C. App. 123
 
 , 128,
 
 532 S.E.2d 583
 
 , 586 (2000) (citation omitted). "The final, or fifth method, as set forth in
 
 N.C. Gen. Stat. § 97-2
 
 (5), may not be used unless there has been a finding that unjust results would occur by using the previously enumerated methods."
 
 Id
 
 . (citing
 
 Wallace v. Music Shop, II, Inc.
 
 ,
 
 11 N.C. App. 328
 
 , 331,
 
 181 S.E.2d 237
 
 , 239 (1971) ).
 

 Here, the Commission rejected the first four methods as inapplicable or unjust under these facts, and calculated Plaintiff's average weekly wages by using the fifth, or final, method.
 
 See
 

 N.C. Gen. Stat. § 97-2
 
 (5). Plaintiff argues the Commission erred by employing this method to calculate her average weekly wages, and asserts the Commission should have employed the second method set forth in the statute.
 

 D. Commission's Application of
 
 N.C. Gen. Stat. § 97-2
 
 (5)
 

 The Commission explained its analysis and rejection of each of the first four statutory methods, and its choice and application of the fifth method as the most appropriate, which we review
 
 de novo
 
 .
 
 See
 

 McLaughlin
 
 ,
 
 206 N.C. App. at 143
 
 ,
 
 696 S.E.2d at 844
 
 .
 

 Methods One and Two
 

 " 'Average weekly wages' shall mean the earnings of the injured employee in the employment in which the employee was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury ... divided by 52[.]"
 
 N.C. Gen. Stat. § 97-2
 
 (5).
 

 Method one only applies when an employee has worked for the employer at least 52 weeks prior to the injury, and "cannot be used when the injured employee has been working in that employment for fewer than 52 weeks in the year preceding the date of accident."
 
 Conyers v. New Hanover Cty. Schools
 
 ,
 
 188 N.C. App. 253
 
 , 258,
 
 654 S.E.2d 745
 
 , 750 (2008). The parties stipulated Plaintiff was employed by the employer for only 36 weeks in the year preceding the date of her injury, and the Commission properly rejected method one to calculate Plaintiff's average weekly wages.
 
 See
 

 id
 
 .
 

 Method two applies where the injured employee "
 
 lost
 
 more than seven consecutive calendar days at one or more times" during the 52 week period immediately preceding the date of injury.
 
 N.C. Gen. Stat. § 97-2
 
 (5) (emphasis supplied). In such event, "the earnings for the remainder of such 52 weeks shall be divided by the number of weeks remaining after the time so lost has been deducted."
 
 Id
 
 . Plaintiff asserts method two is the appropriate method to calculate her average weekly wages. We disagree.
 

 *275
 
 The Symphony's rehearsal and performance season runs from September through May, and includes an optional summer season. Plaintiff argues method two applies because, although she stipulated she worked only 36 weeks during the relevant time period, her contract period was for a full year. Plaintiff asserts the 16 weeks when no services were performed for Defendant-employer should be considered "lost" under method two of
 
 N.C. Gen. Stat. § 97-2
 
 (5). We disagree.
 

 Plaintiff relies upon this Court's decision in
 
 Bond
 
 . The plaintiff in
 
 Bond
 
 was injured during the course of his employment as a brick mason.
 
 Bond
 
 ,
 
 139 N.C. App. at 124
 
 ,
 
 532 S.E.2d at 584
 
 . The plaintiff was a full time employee, but only worked when contract jobs were available and the weather was suitable.
 
 Id
 
 . at 125-26,
 
 532 S.E.2d at 584
 
 . He did not work for seven or more consecutive days on more than one occasion during the 52 weeks preceding the injury.
 
 Id
 
 . at 126,
 
 532 S.E.2d at 584
 
 .
 

 In
 
 Bond
 
 , this Court explained the work available to the plaintiff was dependent upon demand and weather conditions, and the plaintiff was not required to work for days or weeks at a time.
 
 Id
 
 . at 129,
 
 532 S.E.2d at 587
 
 . This Court further explained the plaintiff was not a "seasonal" employee, because "[a] seasonal employee or relief worker does not work full-time every week in the year."
 
 Id
 
 . The Court held the second, and not the fifth, method was appropriate for determining the plaintiff's average weekly wages, because "as a brick mason, plaintiff could be required to
 
 *624
 
 work every week, full-time by his employer."
 
 Id
 
 .
 

 The facts of this case are distinguishable from those present in
 
 Bond
 
 . Unlike in
 
 Bond
 
 , Defendant-Employer in this case was unable to require Plaintiff to work for 52 weeks. Plaintiff performed services for Defendant-Employer pursuant to a contract, which contemplated 36 and not 52 weeks of work. Pursuant to contract, no rehearsals, concerts or "services" were scheduled for the "off season." Also, unlike in
 
 Bond
 
 , Plaintiff's contract clearly stated that no work was required from, or offered to, Plaintiff during that time.
 

 Our precedent in
 
 Conyers
 
 is more directly on point and controlling. In
 
 Conyers,
 
 this Court determined whether the average weekly wages of a public school bus driver should be calculated with or without regard to the ten-week summer vacation period.
 
 Conyers
 
 ,
 
 188 N.C. App. at 257
 
 ,
 
 654 S.E.2d at 749
 
 .
 

 In
 
 Conyers
 
 , the Court held that the plaintiff's employment extended for a period of less than 52 weeks prior to the injury.
 
 Id
 
 . at 258-59,
 
 654 S.E.2d at 749
 
 . The plaintiff drove a school bus for only ten months of the year, was paid for only ten months of work, and was not hired or
 
 *276
 
 obligated to work during the summer vacation period.
 
 Id
 
 . at 259,
 
 654 S.E.2d at 750
 
 . The Court held the plaintiff was not employed for a 52-week period and rejected the first and second methods in the statute to calculate the plaintiff's average weekly wages.
 
 Id
 
 .
 

 Again, and unlike in
 
 Bond
 
 , the employment in
 
 Conyers
 
 and in this case was for a fixed and definite time period of less than 52 weeks. Because Plaintiff's job was non-existent during a portion of the year, she did not "lose" time like the employee in
 
 Bond
 

 .
 

 The application of method two requires the employee to have been employed for a period of 52 weeks preceding the injury, which Plaintiff stipulated she was not. The Commission properly rejected method two as the appropriate method to calculate Plaintiff's average weekly wages.
 

 Method Three
 

 Method three applies "[w]here the employment prior to the injury extended over a period of fewer than 52 weeks."
 
 N.C. Gen. Stat. § 97-2
 
 (5). In such event, the Commission follows "the method of dividing the earnings during that period by the number of weeks and parts thereof during the employee earned wages," provided the results are "fair and just to both parties."
 
 Id
 
 . Where the employment prior to the injury extended over a period of less than 52 weeks, the average weekly wages are calculated in the same manner as method two, with the distinction that the results must be "fair and just to both parties."
 
 Id
 
 .
 

 Like in
 
 Conyers
 
 , Plaintiff's employment prior to the injury extended over a period of fewer than 52 weeks. After rejecting the first two methods of calculating the plaintiff's average weekly wages, the Court in
 
 Conyers
 
 analyzed the third method, but determined that the plaintiff's yearly salary would be nearly $5,000.00 more than her actual pre-injury wages, if she were permitted to divide her annual gross wages by the number of weeks she was actually employed.
 

 Id.
 

 at 259
 
 ,
 
 654 S.E.2d at 750
 
 . The Court rejected the third method, because "[t]he purpose of our Workers' Compensation Act is not to put the employee in a better position and the employer in a worse position than they occupied before the injury."
 
 Id
 
 .
 

 Here, Plaintiff earned $39,412.83 while working 36 weeks during the 52-week time period preceding the injury. Dividing this amount by 36 results in an average weekly wage calculation of $1,094.80. The Commission determined this weekly wage amount results in annualized wages of $56,929.60, over $17,000.00 more than Plaintiff's actual pre-injury yearly wages. We are bound by
 
 Conyers
 
 to conclude the
 
 *277
 
 application of method three would "put the employee in a better position" than prior to the injury and is not a "fair and just" method to calculate Plaintiff's average weekly wages.
 
 See
 

 id
 
 .
 

 Plaintiff notes that the application of method three will always result in gross annualized wages which are higher than the result of method one. Plaintiff argues method three could never be regarded as "fair and just" to both parties and would never be used to calculate average weekly wages.
 
 See
 

 *625
 

 R.J. Reynolds Tobacco Co. v. N.C. Dep't of Env't & Natural Res.
 
 ,
 
 148 N.C. App. 610
 
 , 616,
 
 560 S.E.2d 163
 
 , 168,
 
 disc. review denied
 
 ,
 
 355 N.C. 493
 
 ,
 
 564 S.E.2d 44
 
 (2002) ("[A] statute must be considered as a whole and construed, if possible, so that none of its provisions shall be rendered useless or redundant. It is presumed that the legislature intended each portion to be given full effect and did not intend any provision to be mere surplusage." (citation omitted)).
 

 Plaintiff proposes the Commission should have considered the "fairness" requirement of method three in light of her wage earning capacity. Plaintiff asserts the Commission should have taken into account her summer earnings from the Chautauqua Symphony in New York in order to determine whether the application of method three would result in a "windfall" to Plaintiff. The statute expressly excludes her earnings from outside employment and provides that average weekly wages "shall mean the earnings of the injured employee in the employment
 
 in which he was working at the time of the injury
 
 ."
 
 N.C. Gen. Stat. § 97-2
 
 (5) (emphasis supplied).
 

 We affirm the Commission's determination that applying method three does not produce "fair and just" results where Plaintiff's average weekly wages would be increase to over $17,000.00 more annually than Plaintiff's actual pre-injury yearly wages. Plaintiff's arguments are overruled.
 

 Method Five
 

 The parties agree method four is inapplicable to the circumstances at bar. The fifth, or final, method under the statute is to be used "for exceptional reasons" when the other methods "would be unfair to either the employer or employee."
 
 N.C. Gen. Stat. § 97-2
 
 (5). In such event, the Commission is to "resort to" a method which "will most nearly approximate the amount which the injured employee would be earning were it not for the injury."
 
 Id
 
 .
 

 The Commission properly determined that exceptional reasons exist, which require the application of method five. None of the other four methods set forth in the statute are appropriate for calculation of
 
 *278
 
 Plaintiff's average weekly wages. Plaintiff asserts her pre-injury average weekly wages were $1,094.80, yet acknowledges she was not actually paid this amount on a weekly basis for the 52 weeks prior to her injury and she specifically listed "$760.00+" as her average weekly wages on her Form 18 at the time of her injury.
 

 The Commission calculated Plaintiff's average weekly wages by dividing Plaintiff's annual gross earnings with Defendant-Employer by 52, "because this method produces a result which most nearly approximates the amount Plaintiff would be earning with Defendant-Employer were it not for the injury."
 

 In
 
 Conyers
 
 , this Court affirmed the Commission's application of the fifth method and explained: the "[p]laintiff [bus driver] earned $ 17,608.94 in the 52 weeks preceding the accident. Although she only worked approximately 40 of those weeks and was paid in 10 monthly paychecks, the compensation she collects for workers' compensation will be paid every week, including the weeks of her summer vacation."
 
 Conyers
 
 ,
 
 188 N.C. App. at 261
 
 ,
 
 654 S.E.2d at 751
 
 . Based upon
 
 Conyers
 

 ,
 
 we affirm the Commission's use and application of the fifth method in the statute to calculate Plaintiff's average weekly wages.
 
 Id
 
 . ;
 
 N.C. Gen. Stat. § 97-2
 
 (5). Plaintiff's arguments are overruled.
 

 IV. Conclusion
 

 The Commission properly concluded the application of the first four methods set forth in
 
 N.C. Gen. Stat. § 97-2
 
 (5) to determine Plaintiff's average weekly wages were inappropriate or unjust. The Commission properly determined that "exceptional reasons" existed to apply the fifth method, and applied the fifth method to "most nearly approximate the amount which the injured employee would be earning were it not for the injury."
 
 N.C. Gen. Stat. § 97-2
 
 (5).
 

 Plaintiff has failed to show any error in the Commission's Opinion and Award. The Opinion and Award is affirmed.
 
 It is so ordered
 
 .
 

 AFFIRMED.
 

 Judges ELMORE and STROUD concur.